April, 1858.


# SUPREME COURT—IN PROBATE.

IN THE MATTER OF THE ESTATE OF L. H. KANIU, DECEASED.

A verbal will, made and published according to the custom of the country, antecedent to the enactment of the Organic Laws of 1846, held to be valid.

At Chambers, before Associate Justice ROBERTSON.

The petitioner, David Kalakaua, sets forth in his petition, that L. H. Kaniu, a female chief of this Kingdom, deceased, at Honolulu, in the year 1843 ; that he was the adopted son of the deceased, and grandson of her brother ; and that at the time of her death she was possessed of a considerable amount of real property, which she bequeathed verbally, in accordance with ancient usage, to the petitioner, directing her husband, the late Kinimaka, to take care of the said property for the benefit of the petitioner, who was then an infant, and he now prays to be permitted to prove such verbal will of Kaniu, and that letters of administration on her estate be granted to him.

Citation was issued to Pai, the widow of Kinimaka, and to the guardian *ad litem* of his minor heirs, to appear and contest this application.

It was admitted at the hearing, by the counsel for the heirs of Kinimaka, that up to the year 1844, the chiefs, by the custom of the country, were in the habit of passing their estates by verbal wills, with the knowledge and approval of the King and Premier, and that such wills were recognized by the authorities as binding and operative, and that coverture did not affect the right to make a will.

Nauhele, formerly a member of Kaniu's family, testified in substance, that Kaniu died in Honolulu, in the year 1843, leaving a husband, Kinimaka, who died last year ; that Kaniu had no child of her own ; that at the time of her death she was possessed of real estate on Hawaii, on Molokai, in Honolulu, and in Lahaina ; that the petitioner's grandfather, Aikanaka, and Kalailua, the mother of Kaniu, were brother and sister ; that Kaniu, a few days previous to her death, bequeathed all her property, verbally, to the petitioner, in presence of Governor Kekuanaoa, Kahina, the witness, and others ; and that at the great division of lands, in 1844, Kinimaka went before the King and divided the lands left by Kaniu, as in his own right.

M. Kekuanaoa testified, in effect, that a short time previous to her death, Kaniu sent for him to hear what she had to say respecting the disposition of her property ; that he was at the time Governor of this Island, and Judge of the Court of Oahu, and that it was usual in those times for persons who were dying to send for him, that he might hear, as agent for the King, what they had to say in relation to the disposal of their property ; that he asked Kaniu, in presence of her husband, " Who do you wish to be your heir " When she replied that David Kalakaua was to be heir to all her property ; that he suggested to her the propriety of leaving the property in the hands of Kinimaka until David should become of age, to which she assented, and that he understood Kinimaka to agree at that time to this disposition of the property; that immediately after Kaniu's death, Kinimaka went to Lahaina to inform the King and Premier, while the witness, at the same time, wrote to the Premier notifying her that Kaniu had disposed of her property in the manner before stated ; that he received a letter from the Premier, in reply, stating that the King had given all the property to Kinimaka, which the witness afterwards told the

Premier was not in accordance with the will of Kaniu, to which she replied : " Well, the King has done it ;" that Kaniu was of higher rank than her husband, who was but a petty chief ; that she had told the witness some time before she made her will that she had adopted David Kalakaua, and that he thinks this was antecedent to the enactment of any statute regulating the adoption of children.

Charles Kanaina testified, in substance, that at the time Kaniu died, he was at Lahaina with his wife, M. Kekauluohi, who was at that time the Premier of the Kingdom ; remembers that Kinimaka came to Lahaina, and, in the presence of witness and several other chiefs, informed the Premier that Kaniu was dead, and that she had bequeathed her property to the peti- titioner, to which the Premier replied : " That is good, if you and your wife agreed to do so, it is right the property should go to the *moopuna ;*" that the Premier at the same time received a letter from the Governor of Oahu, informing her to the same effect ; and that, a short time afterwards, Kinimaka told the witness, in Honolulu, that he was to have charge of the property during his life time, and after that David was to have it.

*Per Curiam.* Upon the facts of this case, as they appear from the evidence adduced, I am of the opinion that the appli- cation of David Kalakaua must be sustained. I think there can be no reasonable doubt that Kaniu, a short time before her death, made and declared a verbal will, by which she be- queathed all her separate property, both real and personal, to the petitioner, giving directions, at the same time, that her husband, Kinimaka, should hold and take charge of the prop- erty for the heir until he should become of age.

As to the validity, in law, of such a verbal will, made and published according to the custom of the country, at any time antecedent to the enactment of the Organic Laws, in the year 1846, I have no doubt. Chiefs and others, possessed of prop- erty, were in the habit, in those days, of passing their estates in that manner, and their verbal wills were recognized as bind- ing and operative to all intents and purposes.

It may be objected in the present case, that the petitioner has failed to show that the King and Premier approved the

Estate of L. H. Kaniu.

will of Kaniu, in his favor, and that, therefore, it ought not to be held valid. But this objection, it seems to me, cannot be regarded as a sound one, because the King, I think, had not the power, under the circumstances, even if he had so intended, which does not seem clear, to annul the will of Kaniu, and substitute Kinimaka as her heir, in the place of David Kalakaua, whom she had expressly nominated. Nothing but some strong legal objection could have justified the annulment of the will. It was made subsequently to the adoption of the old Constitution, which guaranteed protection alike for chiefs and common people, in their lives, liberty and property. The law which regulated the descent of lands to heirs, at the time of Kaniu's death, was approved at Lahaina, on the 9th day of November, 1840. According to the provisions of that law, it does not appear to me that the express approval of the King and Premier was necessary to validate the will of Kaniu. The language is as follows : " Be it furthermore enacted in relation to lands which Kamehameha 1st and Kamehameha 2d, gave to land agents, that after the publication of this law respecting taxation, whenever any of those land agents dies, his heir shall render an account to His Majesty the King of the lands which belonged to the deceased, and these shall return one third of those lands to the King." According to this rule all the lands, whether few or many, of every man who dies shall be divided. But if two months elapse after the death of any person, and the heir neither present himself before the King nor send a written notice, then the lands of the heir shall be divided equally. Hereafter the lands of all heirs shall be divided thus, when the King is not notified : " From this time forth, the King and Premier must be informed of all bequests of lands and whatever relates to the heirs." (See old Laws, pp. 47 and 48, Art. 14.) Nothing is said in this statute of the *approval* of a will, by the King and Premier, but, simply, that they should be duly *notified*, without delay. This provision was fully complied with in the present instance, by the official notification of the Premier by the Governor of Oahu, and the verbal report of Kinimaka.

Again, it may be objected further, that it would not be safe, after the lapse of so great a length of time, to allow a nuncu-

Estate of L. H. Kaniu.

pative will, the terms of which are not shown to have been reduced to writing within a reasonable time after the death of the testator, to be proved solely by the oral testimony of witnesses, whose recollection of particular facts, at so great a distance, may have become indistinct and unreliable ; and that the petitioner, or his relatives, ought to have taken steps to assert his alleged rights at an earlier day. To these objections, it is answered that, Governor Kekuanaoa has given some testimony to show that the terms of Kaniu's will were reduced to writing, about the time she declared it verbally in his presence, and that the writing was then in the possession of Kinimaka ; and that the petitioner, who only became of age about sixteen months ago, did, as soon as was convenient thereafter, commence proceedings for the recovery of the property bequeathed to him by Kaniu, which proceedings abated by the death of Kinimaka.

It appears to me that the position of the several witnesses who have testified, at the time when Kaniu's death took place, and the means of knowledge which they consequently possessed, were such as to add greatly to the credibility of their testimony ; and, in the absense of any statute limiting the time within which a will may be proved, I think the Court would not be justified, notwithstanding the lapse of so long a period of time, in rejecting, even a verbal will, made in accordance with the law of the land as it then stood, the proof of which is so clear.

My judgment is that the verbal will of L. H. Kaniu, made in the year 1843, by which she bequeathed all her property to David Kalakaua, is duly proven, and that letters testamentary thereon, with copy of this judgment annexed, be issued to him, the said David Kalakaua.

Mr. Harris, for petitioner.

Mr. Bates, for the heirs of Kinimaka.