# KAPIOLANI ESTATE, LTD., *v.* MARY H. ATCHERLY.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED OCTOBER 9, 1902. .            DECIDED APRIL 7, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

If a decree is not clear or is ambiguous in its terms, it may be construed in the light of the averments and prayer of the bill and averments of the answer and of the remainder of the record.

A decree that A., "as guardian of K., D. and M.," minors, do convey to D. K. certain lands named, held, in the light of the pleadings and the remainder of the record, to be an order for the conveyance of the intrests of the minors. '

In a suit in equity brought to enforce a former decree of a court of equity, the respondent by demurrer questioned the validity and the correctness of the original decree. Held, that the attack thus made is collateral and not direct.

Upon collateral attack, mere errors or irregularities cannot be taken advantage of.

A decree rendered in 1858, requiring a guardian to execute a conveyance of land of his wards, minors, upheld, although it appeared that in the original suit the guardian as such, and not the minors, was named as the party defendant and that service of summons was made on the guardian as such and not on the minors themselves.

While upon a bill to carry a decree into execution the court may re-examine the propriety of the original decree, still it is not bound to do so in all cases. Where no fraud is alleged in obtaining the original decree,—declaring a trust and ordering a conveyance to the *cestui que trust*—and that decree is not incomplete, was adversary and not by consent, was rendered more than forty years prior to the request for re-examination and was followed during the whole of that period by sole and undisputed possession of the land by the complainant and his successors in interest, the decree should not be opened up.

OPINION OF THE COURT BY PERRY, J.

(Galbraith, J., Dissenting.)

This is a bill to enforce a decree in equity rendered by the Honorable E. H. Allen, Chief Justice of the Supreme Court of Law and Equity of the Hawaiian Islands, in Chambers, on November 2, 1858, by which decree it was ordered "that Mr. Armstrong, as Guardian of Kinau, David Leleo and Kinimaka, minor children of Kinimaka, deceased, do convey to David Kalakaua, the plaintiff in this cause, the land named Omulimalo on the Island of Molokai, and the first apana of land set forth in Royal Patent No. 1602 filed in this cause." The prayer is that the respondent be permanently enjoined from prosecuting an action at law instituted by her to recover possession of Apana 1 of R. P. 1602, L. C. A. 129, and from bringing any other proceedings for the same purpose, and that she be decreed to be the trustee of all the right, title and interest of Kaniu, David

Leleo and Moses Kapaakea Kinimaka in and to the land described for the benefit of the complainant and as such trustee be ordered to convey all such interests to the complainant. A demurrer to the bill, on the ground that no cause of action was stated, was sustained *pro forma* and the bill dismissed. From that order the complainant appeals.

The main question is whether the respondent is bound by the decree of 1858. The essential facts, stated in detail in the bill, are as follows:

On December 29, 1856, David Kalakaua filed a bill in equity, in the court on this island then having jurisdiction in such matters, against one Kinimaka. In that bill he alleged, in substance, that he was born in 1836, that prior to 1844 he lived with one Kaniu, a chiefess, as her adopted child according to the custom of the country; that Kaniu was seized of certain rights, hereditary and other, in certain named lands, about thirteen in number, situate within the kingdom and including that of Onoulimaloo, Molokai, and the apanas, house-lots in Honolulu, described in L. C. A. 129; that Kaniu died in 1844, leaving her husband, Kinimaka, the respondent, but no issue; that on the day of her death Kaniu made an oral will, good according to the custom of the country, whereby she appointed the complainant her heir and left to him all her property; that during the session of the Board of Land Commissioners to Quiet Land Titles, Kinimaka procured to be awarded to himself four of the lands named, including the house lots in Honolulu. Certain other facts were also set forth by virtue of which Kalakaua claimed that Kinimaka held the legal title to the lands in trust for him and a decree was prayed for declaring such trust.

Upon the filing of that bill a summons in the ordinary form was issued and served upon Kinimaka. The latter, however, died on January 24, 1857, without having answered the bill. On March 16, 1857, under the title of the original suit, Kalakaua filed a suggestion of the death of Kinimaka and of his leaving "as heirs by will" his three minor children, Kaniu, D. Leleo and Moses Kapaakea, and prayed that the heirs be made

parties to the bill, that a guardian *ad litem* be appointed for them and that a time be set for the further hearing of the cause.

March 6, 1858, Kalakaua filed a petition in probate for proof of Kaniu's oral will and for his appointment as administrator of her estate. At the petitioner's request a guardian *ad litem* was appointed to represent the three minors in that proceeding and citation was issued to Pai, widow of Kinimaka, and George E. Beckwith as administrator of the latter's estate and also as guardian *ad litem* of the minors. Further proceedings having been had, the probate court, on May 3, 1858, gave judgment to the effect that the verbal will was duly proven and that letters testamentary thereon be issued to Kalakaua.

Upon petition of Pai, filed April 24, 1858, Richard Armstrong was appointed administrator of the estate of Kinimaka in place of G. E. Beckwith, resigned, and guardian of the persons and property of Kaniu, David Leleo and Kinimaka, the minors.

On July 19, 1858, a bill in equity was filed by Kalakaua averring substantially the same facts as were set forth in the bill of December, 1856, adding, however, an averment of the probate of the will of Kaniu, and praying for similar relief; but of the lands described in the earlier bill a part only, to wit, two house-lots awarded by L. C. A. 129, R. P. 1602, and the ahupuaa of Onoulimaloo, L. C. A. 7130, was made the subject of the later one and a taro patch at Kaaleo, Oahu, L. C. A. 7130, not referred to in the first bill was included in the second. The concluding portion of the bill of 1858 read: "And your orator would further represent, that the said Kinimaka, at the time of his decease, left a widow, by name Pai, and minor children by name Kaniu, David Leleo and Kinimaka, who by law succeed to the rights of the said Kinimaka, for which said children R. B. Armstrong, D.D., has been appointed guardian. And your orator, respectfully representing that he can have no remedy in the premises, except in a court of equity, humbly prays that the said Pai and the guardian of the said children, may be summoned to show cause, at such time and place as may be most convenient for your Honorable Court why it should not

be decreed that the lands, hereinbefore mentioned, of right belong to your orator. And your orator further prays that it may be decreed that the said Kinimaka did, during his lifetime, procure the award, and hold possession of the before mentioned lands, for the use and benefit of your orator, and further that the said R. B. Armstrong, guardian of the said minor children of the said Kinimaka may be ordered to convey to your orator all the right, title and interest of the said children in the aforesaid lands; and further that the aforesaid Pai, widow as aforesaid of the said Kinimaka, deceased, may be ordered to convey to your orator, all her right, title and interest in and to the above-enumerated lands. And that such other orders and decrees may be made and passed in the premises, as may pertain to equity and good conscience, and may give relief to your orator in the premises." The process issued required the Marshal to summon "Pai (w) and Richard Armstrong (Guardian of Kaniu, Leleo and Kinimaka, minors), defendants", to appear, etc. Service of this summons was made upon Pai and upon Richard Armstrong.

To the bill of 1858 an answer was filed entitled "The Joint and Several Answers of Pai and Richard Armstrong, Guardians of Kaniu, David Leleo and Kinimaka, minors, Defendants, to the Bill of Complaint of David Kalakaua", and signed "Pai, Richard Armstrong, Guardian of Kaniu, David Leleo, Kinimaka, minors. By Asher B. Bates, their Solicitor". But very little was admitted in this answer. Ignorance was expressed as to the truth of the main averments and the complainant was left to his proof of the same. It was, however, stated by the respondents as their belief that if the awards were wrongfully issued to Kinimaka, they were issued upon testimony produced to the Board of Commissioners to quiet land titles which satisfied that Board that Kinimaka was entitled to such awards.

At the trial, counsel for the respondents presented the view that, assuming that the land originally belonged to Kaniu and that she attempted to pass it by will to Kalakaua, nevertheless the King, cognizant of these facts, took back at the time of the great division his title to the land and thereafter, through

the Board of Land Commissioners, made a re-distribution and gave an award covering these lands to Kinimaka and none to David, and that, no appeal having been taken from the award, the latter was final and the complainant was estopped from re-exmining the matter. Decision was reserved by the court. Thereafter, on November 2, 1858, the complainant filed a dis-continuance of his suit except in so far as the same related to the land of Onoulimaloo, Molokai, and Apana 1 of R. P. 1602, and on the same day the final decree now sought to be enforced was made.

Kinimaka by will left his property to Kaniu for life, after him to David Leleo for life and after him the remainder in fee to Moses Kapaakea who was sometimes called Kinimaka in the proceedings under review. David Leleo died before Kaniu and Moses Kapaakea survived the two others. The defendant now holds by purchase from Moses Kapaakea, whatever title the elder Kinimaka had to the land. The complainant is likewise the successor to all of the rights of D. Kalakaua in the property. Richard Armstrong is now dead.

A question of lesser importance in the case may be disposed of first, and that is, concerning the construction of the decree. It is contended that the decree does not require a conveyance of the interest of the minors in the land or the giving of a deed in their name by the guardian. If the decree is not clear or is ambiguous in its terms, it may be read in the light of the aver-ments and prayer of the bill and averments of the answer and of the remainder of the record. See *Clay v. Hildebrand*, 34 Kan. 694 (9 Pac. 466); *Finnagan v. Manchester*, 12 Ia. 521, 2; 5 Encycl. Pl. & Pr. 1064; Freeman on Judgments, §45; 1 Black on Judgments, §123. So read, there can be no doubt, it seems to us, that it was the intention of the court to order the conveyance of the interests of the minors. In our opinion that intention is sufficiently expressed in the decree.

The main contention in support of the demurrer is that the minors were not bound by the decree of 1858, because they were not themselves named as parties defendant in the suit.

In *Meek v. Aswan*, 7 Haw. 750, it was held that an action to

recover rent due for use of a minor's land should be brought
in the name of the minor by her guardian and not in the name
of the guardian as such.   The court said, *inter alia:* "In the
the case at bar, a guardian for the minor had been appointed by
the Probate Court.   How, then, should the suit be brought?
The purpose of it was to collect rent due for use of the minor's
land.   It was the suit of the minor, and not that of the guardian.
But the minor cannot make a contract with an attorney to bring
a suit, and cannot personally bring a suit; therefore, he must
act through some one, or by some one specially appointed by the
court.   The suit is nevertheless that of the minor.

"Analogous to this is a suit where the suitor is represented
by an attorney in fact.   The principal brings the action by the
attorney in fact."   It may be that this is the better rule, that it
should apply as well to actions *against* minors, that the weight
of modern authority elsewhere is in support of this view and
that such is the practice at the present day in this Territory.
But, however that may be, we think that if, as contended for
by the complainant, the contrary practice prevailed   in   our
courts prior to the decision in the *Aswan* case, and the pro-
ceedings in *Kalakaua v. Armstrong, Guardian, and Pai* were
in accordance with that practice, the decree sought to be en-
forced should be held good and binding as against the minors.

In *Meek v. Aswan,* the court recognized the prior existence
of a different practice.   It said:   "We are aware that a differ-
ent practice has in many instances been followed in this court
without objection, and suits have been instituted in the form of
A. B., guardian of C. D."   At the time of that decision (1889),
the five members of the Supreme Court sat singly at *nisi prius,*
exercising the jurisdiction and powers now vested in our Circuit
Judges, and were therefore in a position to know what the prac-
tice in such matters was; and in this connection the ruling of
Mr. Justice McCully, of the Supreme Court, who presided at the
trial before the jury, is of great significance.   The case had
been instituted in the District Court of Honolulu where judg-
ment had been rendered for the plaintiff.   On appeal, after the
jury had been  empanelled and sworn  and the  plaintiff had

42—D.

opened the case, the defendant's counsel moved to dismiss on the ground that the action had been improperly brought in the name of the minor by her guardian and should have been brought by "G. S. Houghtailing, guardian of Eliza Meek." So thoroughly imbued with the past practice was the presiding justice, who afterwards joined in the decision sustaining the exceptions, that he held the declaration defective in respect to the party plaintiff and granted the motion to dismiss. It is interesting to note, in passing, that in the *Aswan* case the court said that the objection to the complaint, even if tenable, should not have been visited with a dismissal, but that an amendment should have been allowed,—in other words, that the error, if any, was at most a mere irregularity and not one affecting the validity of the proceeding.

Formerly, by the common law of Hawaii, guardians possessed and exercised the absolute right to dispose of the real and personal estate of their wards, as might suit their own will. See preamble to Act of August 4, 1851, (Laws of 1851, p. 63); *Laanui v. Puohu et al.*, 2 Haw. 161, 162; *Thornton v. Bishop*, 7 Haw. 431, 434, 435; *Hoare v. Allen*, 13 Haw. 257, 261. It is not to be wondered at that the view as to the title of a guardian in the land of his ward and as to his powers generally growing out of those conditions, had not changed to any great extent during the few years next succeeding the enactment of the law of 1851 which abridged the rights and powers of guardians.

An examination of the records in some old cases referred to at the argument bears out the statement made in the Aswan decision as to the earlier practice.

In Law Case No. 627, 1856 and 1857, an action of ejectment, Kalama, the plaintiff, alleged in her declaration that Kekuanaoa and Ii "have wrongfully entered upon" certain land described "— as you petitioner understands claiming to hold the same on behalf of H. R. H. Victoria Kamamalu—but whether this last averment be true or not complainant does not of herself know." There was no other allegation in the least tending to establish a case against Victoria Kamamalu or from which the inference might be drawn that the two men were being sued as guardians

of Victoria. The two answered, and Victoria filed a motion, which was granted, "that the cause may be discharged as against her, as the petitioner alleges no cause of action against her to which she can plead." Concerning this motion the clerk in his minutes says that "Mr. Bates moved that Victoria's name be stricken out as it was not pretended that she had any control over it, but merely her guardians for her benefit." This is the first reference to the two defendants as guardians but from the remainder of the record it is apparent that it was regarded both by court and counsel that the defendants were being sued as guardians and in the title of the court's decision and of the appeal they are named as guardians. By stipulation of the parties, the court tried and determined the question of right and title to the land, that of damages to be submitted later, if necessary, to a jury or to referees, it being, however, the ward's right and title, and not that of the two men who were guardians, that was involved.

Ikalia (k), guardian of Kanakaokai Aikaula (k) v. Kopaea and others, 1879, (Law No. 1463), Neil Campbell, Guardian of the persons and property of Kaua (k), Ana (w) and Kamaka (k), minors, and Emilia (w) and Neil Campbell, her husband, v. Manu, *et al.*, 1881, (Law No. 1277), Naweli, Guardian of four minors named, v. Mary A. Auld and husband, 1881, (Law No. 1805), and A. F. Judd and S. B. Dole, Guardians of Airene H. Ii, a minor v. Kuanalewa, *et al.*, 1881-1882, (Law No. 2032), were all actions of ejectment in which the title of the wards was tried and determined. In each case the guardian as such was named as the plaintiff, and not the ward by the guardian. So, too, in Equity case No. 568, tried in 1886 and 1887, the bill and all subsequent papers, including two decisions by Mr. Justice Preston, were entitled "Yim Quon v. A. J. Cartwright, Guardian of George Holt and Annie Holt, defendant."

These cases, while but few in number, are sufficient to show a practice different from that declared in the *Asuan* case to be the correct one, and counsel for the respondent, diligent and thorough as he has been in this case, has referred to but one to the contrary. That is the case of Metcalf v. Metcalf, Equity

No. 251, (1859), in which the bill, without title, prayed that Emma Metcalf, a minor, be ordered to convey to the complainant certain premises alleged to be held by her in trust for him. The clerk's minutes and the bill of costs are each entitled "Theophilus Metcalf v. Emma Metcalf" and the decree of the court, as noted by the clerk, was that "the said Emma Metcalf,. minor defendant, do release and convey * * * through her guardian *ad litem* J. W. Austin, Esq." On the other hand it may be noted that the complainant also prayed that "a guardian *ad litem* may be appointed by this Honorable Court who may be cited to appear and answer for the said Emma Metcalf and show cause if any there be why the prayer of this petition shall not be granted," that the order to the Marshal was to summon "J. W. Austin, Guardian *ad litem* for Emma Metcalf, defendant," that service was made as directed on the guardian, and that the respondent's answer was entitled "Theophilus Metcalf v. J. W. Austin, Guardian *ad litem* of Emma Metcalf" and signed by "J. W. Austin, Guardian *ad litem* of Emma Metcalf."

It is true in none of the cases cited by the present complainant does it appear that the question was specifically raised. Yet from the very silence of court and counsel can be implied acquiescence in that mode of procedure and approval of it. "Where a court has erroneously held that certain things were sufficient to give jurisdiction and titles have been built thereon, the doctrine of *stare decisis* forbids the overruling of those decisions."—Van Fleet, Coll. Attack, p. 4. Decrees rendered during the period in question extending from forty-five or more years ago to fifteen years ago, settling the titles to real estate and made in conformity with a procedure then regarded as good and impliedly decided to give jurisdiction to the court and to bind the wards, should be now upheld, irrespective of any later change in procedure and even though the lawyers and judges of to-day think differently as to the correctness of the former practice.

If the defects complained of can be regarded, not as matters affecting the jurisdiction but as constituting at most mere error, certainly such error cannot be taken advantage of in this case because the attack now made on the decree of 1858 is collateral

and not direct. "A collateral attack is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree."— 17 Am. & Eng. Ency. Law, 2nd ed., 848. See also *Morrill v. Morrill*, 20 Or. 96, 101; *Nichols v. Smith*, 26 N. H. 298, 300. "The word 'collateral' ", in this connection, "is always used as the antithesis of 'direct', and it is therefore wide enough to embrace any independent proceeding. To constitute a *direct* attack upon a judgment, it is said, it is necessary that a proceeding be instituted for that very purpose. If an appeal is taken from a judgment, or a writ of error, or if a motion is made to vacate or set it aside on account of some alleged irregularity, the attack is obviously direct, the sole object of the proceeding being to deny and disprove the apparent validity of the judgment. But if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral and falls within the rule."—1 Black on Judgments, Sec. 252. "A direct attack on a judicial proceeding is an attempt to avoid or correct it in some manner provided by law.  *  *  * A collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it, or to deny its force and effect in some manner not provided by law."—Van Fleet, Collateral Attack, pp. 4, 5. Under either of these definitions,— we have not found any essentially different — the present attack is collateral. The complainant's bill has for its sole object the enforcement of the decree and necessarily proceeds on the assumption that that decree is not made in any manner provided by law nor in a proceeding instituted expressly for that purpose. "An attack on a judgment in a proceeding to revive it is a collateral attack."— *Sharon v. Terry*, 36 Fed. 337, 346. See also 1 Black on Judgments, Sec. 252.

Service of summons in the case of Kalakaua v. Armstrong was made on the guardian and not on the minors themselves. The same procedure was followed in *Metcalf v. Metcalf* and in *Yim Quon v. Cartwright*, and is not unsupported by precedents

elsewhere or in reason. The minors in this case were, in 1858, about eleven, seven and one year old respectively. Service on them would be, in reality, a worthless form. After service it is the guardian who acts and who conducts the whole defense; the ward does nothing and can do nothing. True, in theory, such service would serve to notify their parents or others standing in *loco parentis* of the institution of the suit. That purpose was in fact accomplished in this case for their mother, Pae, was herself a defendant and the guardian appointed at her request was also served. General guardians are by our statute, Section 1970, C. L., authorized and required to "appear for and represent" the ward "in all legal suits and proceedings, unless where another person is appointed for that purpose, as guardian or next friend." A guardian might, perhaps, under this provision, waive service upon a minor defendant and enter an appearance and thereby bind the minor. That there is a difference of authorities as to whether a judgment against a minor without service on him is absolutely void for want of jurisdiction or is merely voidable and so immune from collateral attack, is conceded by respondent. The point as to lack of service is relied upon by her only to the extent of showing that for that reason the decree was erroneous and should not be now enforced.

The old decree is claimed by respondent to be erroneous for the further reason that upon the facts and the evidence adduced in that proceeding in 1858, the court erred in holding that Kinimaka, and after him his heirs, was a trustee of the legal title for the benefit of Kalakaua. The contention of the respondent is that because of these two alleged errors last mentioned, to wit, the lack of service and upon the merits, the court should refuse to enforce the decree. It is not contended that the court *must* in all such cases re-examine the former proceedings but merely that it may; in its discretion, do so. Assuming that to be so, we decline to re-try the old case. The guardian appeared and contested the complainant's claim, presenting in opposition substantially the same views now sought to be urged by the respondent. The ward's interests were not permitted to go by default but were fully defended by counsel. The decree,

while not carried out by the execution of a conveyance, was in fact acquiesced in, as appears by the bill by all concerned and complainant and his successors in interest from that time continuously until about January, 1900, held open, notorious and undisturbed possession of the land. Under the circumstances, and after a lapse of forty-four years, we do not think that the court should examine into the merits of the former proceedings or refuse to enforce the decree for the reasons suggested.

As to whether the bill of 1858 was a continuation, by revival of the proceedings instituted in 1856, or was the commencement of a new and independent suit, we express no opinion.

The decree appealed from is reversed and the cause remanded to the Circuit Judge for such further proceedings as may be proper.

*Kinney, Ballou & McClanahan* and *H. A. Bigelow* for the complainant.

*L. A. Dickey* for the respondent.

### CONCURRING OPINION OF FREAR, C.J.

I concur in general in the reasoning and conclusions of the foregoing opinion.

It is true, as held in *Lawrence Mf'g Co. v. Janesville Mills*, 138 U. S. 552, that "where a party returns to a court of chancery to obtain its aid in executing a former decree, it is at the risk of opening up such decree as respects the relief to be granted on the new bill," but that does not mean that the former decree should be opened up in all cases. As a rule it is not opened up where, as here, so long a time has elapsed since it was made and where no fraud is alleged in obtaining it and where it is not incomplete and where it was adversary and not by consent. The case just cited from the Federal Supreme Court was brought to piece out a decree that was both incomplete and by consent. As the court said: "The prior decree was the consequence of the consent and not of the judgment of the court, and this being so, the court had the right to decline to treat it as *res adjudicata*." And in *Buchanan v. Knoxville & O. R. Co.*, 71 Fed. Rep. 324,

the United States Circuit Court of Appeals for the Sixth Circuit distinguished that case, and, after pointing out that it was a case to piece out an incomplete consent decree and quoting from it the language above quoted herein, said: "That is a very different case from that of a party who stands on a complete decree, and seeks no other benefit or advantage than that which is due by the general law from a former judgment." In the present case it would be practically impossible, owing to lapse of time and the deaths of witnesses, to go into the merits of the former decree, and the plaintiff and its predecessors have been in possession and enjoyed the benefits of that decree without question for more than forty years.

The question whether the guardian or the minors should have been made parties and served in the former case can hardly be said to be involved. We may assume not only, as was perhaps held by implication in *Meek v. Aswan*, 7 Haw. 750, that it would have been correct practice to have made the minors defendants and to have served them, but also that it was incorrect practice to make the guardian the party defendant and serve him alone. Still, if that is only a question of error, and not of jurisdiction, it cannot be raised on a collateral attack. There can be no doubt that this attack is collateral. The only question, therefore, is whether the court in the former case merely committed error or was entirely without jurisdiction, whether the decree was absolutely void or merely voidable on direct attack. The *Meek* case was one of direct attack and the court seemed to intimate that the irregularity complained of, if well founded, was one of error rather than of jurisdiction. In *McAncar v. Epperson*, 54 Tex. 220, in which a judgment was attacked collaterally on the ground that it was void because no service had been made on the minor defendants, the court said: "After a careful and extended examination of many cases in addition to those cited by counsel, in which the judgments in adversary proceedings, like the one now under consideration, were sought to to be set aside because the minor defendants, although represented by guardians *ad litem*, had not been personally cited, we indorse this remark of Judge Hitchcok's in *Robb v. Irwin:*

'Much is said in the books upon the subject. But I apprehend it will be found upon examination that decrees entered under such circumstances are generally, if not universally, holden to be voidable, not void.' 15 Ohio, 699; *Preston v. Dunn*, 25 Ala., 507; *Nelson v. Moon*, 3 McLean's C. C., 319; *Day v. Kerr*, 7 Mo., 426; *Sheldon v. Newton*, 3 Ohio St., 504. * * * * * We are of opinion, upon the weight of authority, that a failure to cite the minor defendants personally in suit No. 2103, they having been defended by a guardian *ad litem*, however sufficiently erroneous to have caused a reversal of the judgment against them on direct proceedings, was not such fatal defect as would render the judgment absolutely void, so that it can be successfully impeached on a collateral attack." In *Dampier v. McCall*, 78 Ga. 687 (3 S. E. 563), the court went so far as to decline to interfere even on direct attack where service had been made on the guardian alone. See also as bearing on this general question, *Smith v. McDonald*, 42 Cal. 484; *Lessee v. Lowe*, 18 Oh. 368; *McFarland v. Febiger's Heirs*, 7 Oh. 198; *White v. Albertson*, 14 N. C. 241; *Gotendorf v. Goldschmidt*, 83 N. Y. 112; *Doe v. Litherberry*, 4 McClean 442; *Ankeny v. Blackiston*, 7 Or. 407; *Jongsma v. Pfiel*, 9 Ves. 357; 1 Dan. Ch. Pl. & Pr. 444, note 6. It is true these cases relate to the question of service of process rather than to that of parties of record, but the former would seem to be the more important of the two questions. If the principle contended for is correct, it would seem quite as important that the minors should be personally served as that the defendant should be "A, minor, by B, guardian" instead of "B, guardian, for A, minor." No instance has been cited in which a decree made under either of these circumstances has been held void on collateral attack. The question is not whether *Meek v. Aswan* shall be followed or whether the matter is *stare decisis* in view of the former practice. To hold that the question is one of error rather than of jurisdiction, and so that the decree is not subject to collateral attack, is in entire harmony with the decision in *Meek v. Aswan;* and former practice, as regarded in a number of the cases above cited, greatly emphasizes the pro-

priety of upholding former decrees as far as possible under circumstances like the present.

### DISSENTING OPINION OF GALBRAITH, J.

I do not concur in the argument or conclusion announced in the foregoing opinion. ·

The rule recognized by the Supreme Court of the United States, and absolutely binding on the Courts of this Territory, is that, "where a party returns to a court of chancery to obtain its aid in executing a former decree, it is at the risk of opening up such decree as respects the relief to be granted on the new bill." *Lawrence Mf'g Company v. Janesville Cotton Mill*, 138 U. S. 552, 561.

This rule clearly gave the trial court the power in hearing the bill to open up and re-examine the decree of 1858, and, it seems to me, that with the possession of the power there was an implied duty to exercise it. Aside from this consideration a decree that has been permitted to remain dormant for 44 years needs a "clear bill of health" to enable the doctrine of *stare decisis* to be invoked in its behalf and to authorize a court after so long a time to decree its specific performance.

This decree of 1858 did not divest the respondent's grantor of the legal title to the property in dispute, nor did it pretend to do so. It merely ordered Armstrong, as guardian, to convey the property. This he did not do. Why we do not know. The fact that complainant and its grantor remained passive so far as this decree was concerned for all these years while the legal title to property was in another and took no step to force a conveyance of title under the decree is difficult to reconcile with the claim that they felt secure in the legality of the decree. I do not deem it necessary to go into the merits of this decree further than to state that there is sufficient on the face of the bill to raise a serious question in my mind as to its correctness.

I do not consider the claim well taken that the respondent and her predecessor in title "acquiesced" in this decree by the fact that no action was taken to have the same reversed or set aside.

They were not compelled to take the initiative or to do anything, so long as no attempt to execute the decree was made. The decree was harmless to them so long as no attempt was made to enforce it. The burden of action was on the complainant. The legal title was in the respondents' grantor and so long as nothing was done to compel him or them to convey, his, or their, inaction cannot be said to be "acquiescence" to her prejudice.

The doctrine of *stare decisis* has been invoked in behalf of this decree. It seems to me that this doctrine will prohibit the granting of the prayer of the bill. Blackstone says relative to this doctrine "For it is an established rule to abide by former precedents. Where the same points come again in litigation; as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion; as also because the law in that case being solemnly declared and determined, what before was uncertain, and perhaps indifferent, is now become a permanent rule which it is not in the breast of any subsequent judge to alter or vary from according to his private sentiments; he being sworn to determine, not according to his own private judgment, but according to the known laws and customs of the land; not delegated to pronounce a new law, but to maintain and expound the old one." 1 Blackstone 69.

I understand that it is the "former precedents" of this Court not the uncertain precedents of the Circuit Court (which can only be ascertained by a tedious search of the files of that Court) that this Court should "abide by" and that it is in this way that we may "keep the scale of justice even and steady and not liable to waver with every new judge's opinion."

This Court has decided in a suit by a minor to collect rent due, that the action should be commenced in the name of the minor by its guardian. (*Meek v. Aswan*, 7 Haw. 750). The converse of this proposition is that a suit against a minor should be against him by his guardian and not against his guardian alone. This is admitted so far as this case is concerned. "It may be that this is the better rule, that it should apply as well to actions *against* minors, that the weight of modern authorites, elsewhere is in support of this view and that such is the practice at the present

day in this Territory." Notwithstanding this admission the decision in the *Aswan* case is not followed, nor is it overruled, in express terms, for the reason that a "contrary practice prevailed in our Courts prior to the decision in the *Aswan* case." This "contrary practice" may have been permissible prior to the decision in the *Aswan* case but that decision having declared the practice wrong we cannot now approve of such practice without overruling that case. That case ought not to be overruled for the reason that it is good law and is supported by the great current of judicial authority elsewhere.

Again what is the evidence of this contrary practice? No decisions were cited in this jurisdiction to support it. We are referred to the files of some seven or eight cases in the Circuit Court where the papers are entitled as were those in the case in which the decree in question was rendered. It is not contended that the correctness of the procedure was raised in any of these cases or that the ruling of a Circuit Judge supported it, but it is contended that there was an "implied acquiescence" in the practice "from the very silence of Court and counsel." So we have only the "implied acquiescence" of the Court and counsel in seven or eight cases in the Circuit Court extending over a period of thirty or forty years to support the majority of the Court in refusing to follow the decision of this Court rendered at a time when the Court was composed of five judges. This reasoning followed to its logical conclusion, it seems, would prevent this Court from overruling a practice or procedure of the Circuit Court no matter how erroneous provided "court and counsel" had by silence acquiesced in it in a few cases, extending over a number of years.

Again the practice of digging up the files of the Circuit Court and referring to them to establish a practice or procedure does not appeal to me very strongly. There is enough difficulty in determining such questions when reference is made to reported cases where the evidence of the question passed upon is supposed to be preserved in practicable form. To search through a lot of files of the trial court and examine the entitling of the papers and the endorsement on the summons is not in any way a satisfac-

tory method to establish a question of procedure let alone to justify an appelate court in passing by one of its own solemn decisions.

The heirs of Kinimaka were the real parties in interest in the suit resulting in the decree of 1858 and sought to be enforced by the bill. These heirs were not made parties to that suit, were not served with process therein and made no appearance, although their guardian was a party, was served and appeared and contested the cause still the heirs were not parties and were not bound by the decree nor is the respondent in this case and the decree ought not to be enforced without a re-trail of the cause.

The decree sustaining the demurrer to the bill should be affirmed, and the appeal dismissed.