# IN THE MATTER OF THE PETITION OF LEWERS & COOKE, LTD.

## APPEAL FROM COURT OF LAND REGISTRATION.

ARGUED JANUARY 21, 1908.          DECIDED MARCH 5, 1908.

### HARTWELL, C.J., WILDER AND BALLOU, JJ.

LIMITATION OF ACTIONS—*right of remainderman.*

Where land is devised to A for life, remainder to B for life, remainder to C in fee, and A conveys all his interest to B and then outlives B, the statute of limitations does not begin to run against a grantee of C until the death of A.

LAND COMMISSION AWARD—*finality.*

A land commission award is a final adjudication of all claims to the land awarded existing prior to December 10, 1845.

EQUITY—*nonenforcement of erroneous decree.*

Upon a bill alleging breach of fiduciary duty in the obtaining of a land commission award a decree was rendered in 1858 ordering the guardian of the minor heirs of the awardee to convey the land. No conveyance was made. Held that the decree, being a collateral attack on a land commission award, was erroneous as a matter of law, and that the court of land registration in 1907 should not enforce it by registering the title of those claiming under the decree as against the outstanding legal title.

## OPINION OF THE COURT BY BALLOU, J.

This is an appeal by Mary H. Atcherley from a decree of the court of land registration registering the title of Lewers & Cooke, Ltd., to a parcel of land comprising portions of L. C. A. 129 to Kinimaka, L. C. A. 729 to Kekuhaupio and land described in the deed from the minister of the interior to estate of B. P. Bishop dated July 8, 1899. The appellant claims title to all that part of the land covered by apana 1 of L. C. A. 129, R. P. 1602 to Kinimaka and shows a complete legal title as follows:

1. Land Commission Award 129 to Kinimaka dated April 10, 1849.

2. Royal Patent 1602 to Kinimaka issued August 30, 1853, upon payment of the government commutation.

3. Will of Kinimaka, who died in 1857, devising all his property to his daughter, Kaniu Kinimaka, for her lifetime then to his son David Leleo Kinimaka for his lifetime, the remainder to his son Moses Kapaakea Kinimaka.

4. Death of the first life tenant, Kaniu, January 4, 1901, she having survived the second life tenant, David Leleo, who died in 1884.

5. Deed dated May 18, 1897, from the remainderman Moses Kapaakea Kinimaka, conveying all his interest as heir of Kinimaka to Mary H. Atcherley the present appellant, who was his niece and a daughter of David Leleo Kinimaka.

Against this chain of legal title the petitioner claims in rebuttal (1) adverse possession, and (2) equitable title by virtue of a decree in the supreme court dated November 2, 1858, in a case entitled *David Kalakaua v. Pai and Richard Armstrong, Guardian,* decreeing that Richard Armstrong, guardian of Kaniu, David Leleo and Moses Kapaakea Kinimaka, minor children of Kinimaka, deceased, convey to Kalakaua, petitioner's predecessor in title, the land in controversy.

Although David Kalakaua and those claiming under him have been in possession of the land since the decree of the supreme court in 1858, they have acquired no adverse possession as against appellant, who claims by deed from the remainderman, Moses Kapaakea, sometimes called Kinimaka in the early proceedings. No right of action accrued to Moses Kapaakea until the death of the first life tenant on January 4, 1901, and the appellant, who had previously obtained a deed, brought ejectment in July of the same year against the Kapiolani Estate, Ltd., then in possession of the premises, which suit is still pending. The fact that the first life tenant, Kaniu, conveyed in 1880 all her interest to David Leleo, the second life tenant, who died in 1884, did not accelerate any right to possession in the ultimate remainderman, but by the specific terms of our statute the appellant's right to commence an action must be deemed to have accrued when the first life estate would have expired by its own limitation. R. L. Sec. 1990.

It is urged that the first life estate became extinguished by merger in the second, so that the statute of limitations began to run upon the death of David Leleo, but the common law doctrine of merger, even if not precluded by the language of the statute, and if applicable to the prejudice of a stranger (Co. Litt. 338b) would have no application to the conveyance of a disseizee, whose deed would probably convey nothing at common law. *Mossman v. Hawaiian Government,* 10 Haw. 421. Still less could it apply to the conveyance of Kaniu in the present case, made at a time when her life estate had

already been lost by the adverse possession of Kalakaua. *Moore v. Luce,* 29 Pa. St. 260.

Nor is the situation altered by the fact that appellant is the daughter of the second life tenant, for any estate per autre vie which she might have inherited at her father's death had long been barred, and even if she had acquired a right at that time it would have been no bar to the maintenance of her right subsequently acquired as grantee of the remainderman. Angell, Limitations, Sec. 375; *Wells v. Prince,* 9 Mass. 508. It is urged that a lost deed may be presumed, but we know of no case in which this doctrine has been invoked against a person in the situation of appellant, who does not claim under those who have suffered long and unexplained possession by the adverse party, but under the newly accrued right of a remainderman.

The equitable claim presents more difficulty. The appellant's ejectment suit against the Kapiolani Estate, Ltd., was met by a bill in equity filed by the latter admitting that the "bare legal title" was held by appellant, and praying that a conveyance by the present holder of that title might be decreed in conformity with the decree of 1858. Upon demurrer this court held that the bill stated a cause of action. *Kapiolani Estate, Ltd., v. Atcherley,* 14 Haw. 651. The case was remanded, and defendant answered, after which the land now in controversy was sold by the Kapiolani Estate, Ltd., to the present petitioner, which applied to the court of land registration for a registered title. It is conceded on both sides that the court of land registration has authority to determine all questions, both legal and equitable, involved in the title to land, so that the question is substantially the same as that presented by the bill in equity brought by the Kapiolani Estate, Ltd.

A full statement of the facts leading up to the supreme court decree of 1858, as stated in the petition of the Kapiolani Estate, Ltd., may be found in the decision referred to. The record in the case now before us covers the same ground with some

amplifications. Previous to the establishment of the land commission the land, according to the claim filed by Kinimaka, had been given him by Liliha. According to petitioner's contention it belonged to Kinimaka's wife Kaniu, who died in 1844, having made an oral will, then good according to the custom of the country, giving the property to her adopted child David Kalakaua, then an infant eight years old. Kinimaka, the husband of Kaniu, reported this will to the king, according to custom, but the king, according to the testimony of Governor Kekuanaoa before the probate court, disapproved it on account of the tender years of Kalakaua, and awarded the land to Kinimaka. Thereafter the board of land commissioners was established and Kinimaka presented and proved his claims and obtained an award. The land commission records show that in his petition, resulting in award 129, Kinimaka claimed three pieces of land in the same vicinity, the first as having been given by Leleahano to Hewahewa, thence to Kapiiwi and to himself; the second as having been given by Kanikeaouli to Kaniu and by Kaniu to himself; and the third as having been received from Liliha, Kahikona being the witness. The testimony before the land commission apparently applied to one parcel only, and refers to Kaniu's previous ownership, no record appears of the witness Kahikona having been examined, but all three parcels were awarded, the third as claimed becoming apana 1, which is the land in controversy.

Upon coming of age David Kalakaua filed a bill in equity against Kinimaka to enforce a trust upon all the lands owned by Kaniu, claiming two pieces of land on Hawaii, one on Molokai, one-half of Keana on Oahu, and "certain houselots and small divisions of land in and near Honolulu" described in L. C. A. 129. Upon Kinimaka's death Kalakaua filed a suggestion of his death asking that his heirs be made parties, but apparently abandoned this proceeding and applied in probate for proof of Kaniu's oral will and for his appointment as administrator of her estate.

The probate court decided that a verbal will made prior to the organic laws of 1846 could be probated and that the provision of the old laws that the king and premier must be informed of all bequests of lands did not authorize the veto which had been exercised by the king in this case. The will was accordingly admitted to probate and letters testamentary issued to David Kalakaua. *Estate of Kaniu*, 2 Haw. 82.

Armed with this decision, which, though not purporting in terms to deal with any intervening rights to the real-estate, was a substantial recognition of his claim, David Kalakaua brought a new proceeding in equity covering only two houselots in Honolulu awarded by L. C. A. 129, R. P. 1602, an ahupuaa on Molokai and a taro patch on Oahu. The bill was directed against Pai, widow of Kinimaka, and Richard Armstrong, guardian of Kaniu, David Leleo and Kinimaka, minor children of Kinimaka. Pai and Armstrong answered, leaving petitioner to his proof of all material allegations except those of record, but averring "that if the awards have wrongfully been issued to the said Kinimaka, the same were issued upon testimony produced to the Board of Commissioners to quiet land titles, which satisfied that Board that the said Kinimaka was entitled to such award." Testimony for the petitioner was taken, apparently none being offered for the defendants, and the points made by counsel, including the defendant's claim that the land commission award was conclusive, are conclusive, are noted upon the record under date of August 10, 1858. The next papers that appear are a partial discontinuance and a decree, reading as follows:

"DAVID KALAKAUA                 SUPREME COURT
            vs.                     In Equity.
RICHARD ARMSTRONG,              Before Chief Justice
Guardian of Kaniu,                  E. H. Allen.
David Leleo and Kinimaka,
Minor children of Kinimaka, dece'd.

"Now comes the plaintiff in the above entitled cause, and in consideration of certain sums of money paid by Kinimaka

during his lifetime, for his use and benefit, relinquishes all right to any and all lands now included in the estate of the said Kinimaka and set forth in the petition in the above entitled cause, and discontinue my action for the same saving and excepting the land of Onoulimalo in the Island of Molokai, and the 1st apana of land set forth in Royal Patent No. 1602 filed in the cause, and hereby discontinue my action, as set forth in my Bill of Complaint, in the above entitled suit, except for the said land of Onoulimalo, and for the apana No. 1, Royal Patent No. 1602, herein above referred to.

    (Signed)    "DAVID KALAKAUA."

Nov'br. 2nd, 1858.
Supreme Court Room
Honolulu, Oahu.

  "Endorsed: Supreme Court. David Kalakaua vs. Richard Armstrong, Guardian of Kanin, David Leleo Kinimaka, minor children of Kinimaka deceased.

  "Discontinuance except for Land Onoulimalu & apana 1, Royal Patent No. 1602.

  "Filed 2nd Nov'r. 1858.

        "Jno. E. Barnard
         Clerk Sup. Court."

"SUPREME COURT      2 Nov.'r. 1858
 IN EQUITY.       AT CHAMBERS
DAVID KALAKAUA       Before
   vs.         Hon. E. H. Allen,
RICHARD ARMSTRONG,     Chief Justice.

Guardian of Kanin,
David Leleo and Kinimaka
minor children of Kinimaka
deceased.

  "The Court did order adjudge and decree in this matter that Mr. Armstrong, as Guardian of Kanin, David Leleo, and Kinimaka, minor children of Kinimaka, deceased, do convey, to David Kalakaua the plaintiff in this cause, the land named Onuulimalo on the Island of Molokai, and the first Apana of land set forth in Royal Patent No. 1602 filed in this cause.

    (Signed)    "Jno. E. Barnard
         "Clerk Supreme Court."

"Endorsed: Supreme Court. David Kalakaua vs. Richard Armstrong, Guardian of Kaniu, David Leleo and Kinimaka minor children of Kinimaka dec'd.

"Proceeding.

2 Nov'r. 1858."

There is no record that the conveyance decreed was ever made, David Kalakaua and his successors apparently relying upon the decree and their possession thereunder.

In the case of *Kapiolani Estate, Ltd., v. Atcherley,* 14 Haw. 651, it was decided that although the above proceedings were brought against the guardian the infants were bound by the decree and that it was the interests of the minors which were ordered to be conveyed. We are urged to reconsider that decision, particular stress being laid upon the many indications that the decree of 1858 was substantially a consent decree. We do not find it necessary, however, to review the ground already covered in that decision as we are of the opinion that an additional point not decided in the proceedings on demurrer is decisive against the right of the petitioners to a registered title, which would be substantially an enforcement of the decree of 1858.

The petitioner, in seeking to register a title depending upon the unexecuted decree in *Kalakaua v. Pai and Armstrong* is, as against the holder of the outstanding legal title, in the same position as a party asking the aid of a court of chancery in executing a former decree, and it is well established that he must take the risk of opening up such decree for reexamination. *Lawrence Mf'g. Co. v. Janesville Mills,* 138 U. S. 552. Lapse of time seems to be no bar to the examination of the old decree, particularly when the alleged error is one of law and not a question of fact dependent upon testimony which might be no longer available. In *Hamilton v. Houghton,* 2 Bligh. 169, the House of Lords refused in 1820 to enforce a decree made in 1780. In *Johnson v. Northey,* Finch's Prec. in Chancery 134, the decree opened was apparently about fifteen years old. In *Lawrence v. Berney,* 2 Rep. in Ch. 127, it was

twenty-seven years after the unexecuted decree that "this Court desired to be excused, in making it its own Act, to build upon such ill Foundations, and charging his own Conscience with promoting an apparent Injustice." In *Wadhams v. Gay,* 73 Ill. 415, and *Gay v. Parpart,* 106 U. S. 679, the situation was somewhat similar to the case at bar in that the parties had neglected to get a conveyance of the legal title in pursuance of an equity decree, and the courts held the decree, which was made in 1851, unenforceable because erroneous, the state court decision being rendered in 1874 and the supreme court decision during the 1882 term.

Applying the principle of these cases to the case at bar, we are of the opinion that the decree in *Kalakaua v. Pai and Armstrong* was erroneous in assuming the power to order Kinimaka's successors in title to convey land which between the date of the oral will of Kaniu and the decree of 1858 had been awarded by the board of land commissioners to Kinimaka.

A full history of the creation and proceedings of the land commission would be but a repetition of the history of land titles in this country already discussed many times. The statute creating the land commission is given in the Revised Laws of 1905, p. 1160, and the principles adopted by the land commission and given the force of law by resolution of the legislative counsel on p. 1164. The effect of these statutes and of the awards under them is discussed in *Keelikolani v. Robinson,* 2 Haw. 522; *Estate of Kamehameha IV.,* 2 Haw. 715; *Kahoomana v. Minister of Interior,* 3 Haw. 635; *Kenoa v. Meek,* 6 Haw. 63; *Harris v. Carter,* 6 Haw. 195; *Thurston v. Bishop,* 7 Haw. 421. One quotation must suffice to give a brief outline of the history of the land commission:

"There is a time in the history of every original nation not formed by colonization, when as it emerges from barbarism into civilization, titles to land may be said to have a beginning by positive institution of the people of such nation. Previous to the advent of Christianity to this country, in the early part of this century, Kamehameha I., as King by right of conquest,

was the lord paramount and owner of all the land of this King-
dom. This right continued in his successors until the reign
of Kamehameha III. Under this King a government, under
a constitution and laws, had its birth, superseding a government
of the arbitrary will of the King.

"Claims of one character and another to the possession of
land had grown up, but there was no certainty about them, and
all was confusion; and finally, after years of discussion had
between the King, the chiefs, and their foreign councillors, the
plan of a Board of Commissioners to Quiet Land Titles was
evolved, and finally established by law, for the purpose of set-
tling these claims and affording an opportunity to all persons
to procure valid paper titles emanating from the Government
representing the sovereignty, the source of all title to land in
this Kingdom, to the land which they claimed. As a part of
this scheme Kamehameha III., with unexampled magnanimity,
relinquished his claim of ownership as sovereign to over two-
thirds of the entire territory of the Kingdom, in order that the
same might be awarded to the chiefs and common people by
the Land Commission. The Commission was authorized to
consider possession of land acquired by oral gift of Kameha-
meha I., or one of his high chiefs, as sufficient evidence of
title to authorize an award therefor to the claimant. This we
must consider as the foundation of all titles to land in this
Kingdom, except such as come from the King, to any part of
his reserved lands, and excepting also the lists of Government
and Fort lands reserved. The land in dispute in this case is
not one of those specifically reserved by the King, Kameha-
meha III., to himself and his successors, and not being in the
lists of lands specially set apart as Government or Fort lands, ·
must be one of those over which the Land Commission had
jurisdiction to award to the claimant." *Thurston v. Bishop,*
7 Haw. 421, 428.

The land commission was a board for the investigation and
final ascertainment or rejection of all claims of private in-
dividuals to any landed property acquired before the passage
· of the act, on December 10, 1845. By Sec. 7 of the act creating
the commission its decisions were only subject to appeal to the
supreme court, and in the absence of such appeal were final.
It considered equitable claims as well as legal (R. L., pp. 1169,

1175) so far as those terms could be applied to the kind of titles theretofore existing. Among the benefits to result from the awards, the commission laid down and the legislative council approved and enacted: "All parties having been cited before awarding, there can be no counter claims to the same piece of land after award, except on appeal, and such appeal cannot be taken except by a party who has presented his claims to the Board." Principles of Land Commission, R. L. p. 1177.

Every consideration of history and policy seemed to add weight to this express statutory enactment, and in every case since the land commission in which the validity of one of its awards has been questioned the award has been held conclusive against every form of attack. Even before the claim now in question had arisen the court, in 1851, had refused to go behind a land commission award and receive evidence of its having been obtained by fraud, the court saying:

"The Land Commission may have decided wrong, but if so, Gill or Kalua, both of whom had notice of the award, could have appealed to the Supreme Court, agreeably to the statute in such case made and provided. In that Court they could have shown fraud, want of title, or anything else affecting the case; but it cannot be done here, under the circumstances. If we are to go into these cases anew, treating the awards of the Land Commission and the Supreme Court as nothing, then there is no security for any man's real estate—no rest for his title—and the whole kingdom will be afloat."—*Kukiiahu v. Gill,* 1 Haw. 54.

In 1883, Kalakaua, then king, and Kapiolani, his wife, filed a bill in equity in regard to certain lands claimed by Kapiolani under one Kaunuohua who had procured awards reading "To Kaunuohua for W. L. Moehonua," alleging that the latter name had been fraudulently and erroneously inserted, Moehonua not being a claimant before the land commission and no evidence having been offered in his favor. In sustaining a demurrer, the court said:

"We are not to assume after this lapse of time that the Land Commission had no authority for issuing the award they actu-

ally did issue. It was undoubtedly an award in favor of Moehonua. The failure to record evidence to sustain it does not vitiate it, although if the question were opened it would be provable against it." *Kalakaua et al. v. Keaweamahi et al.,* 4 Haw. 577.

In a case shortly after this, upon a bill in equity to declare a trust, it appeared that the heading of a land commission award was "Mahuka and Kaai" but the land was awarded to "Mahuka." The evidence before the land commission was introduced to show not only that the witnesses had testified, but that the claimant Mahuka had specifically admitted, that his brother Kaai had equal rights with himself. The court held the award to Mahuka conclusive, saying:

"The law in this case, respecting the examination of proceedings before the Land Commission, has been placed by this Court, in the cases of *Kukiiahu vs. Gill,* 1 Hawn., 54, and *Bishop vs. Namakalaa,* 2 Hawn., 238, on a foundation which cannot be disturbed. Every year which passes increases the force of the reason which demands that the adjudications of the Land Commission be not now re-examined." *Kaai v. Mahuka,* 5 Haw. 354.

The next case involving this point was the application for the probate of an alleged lost will of Kakauluohi, premier of the kingdom, which came before Justice Judd in 1876. The circumstances were similar to those in the *Estate of Kaniu,* that is, an alleged will made prior to the land commission, and the court held the award of the land commission, made after the date of the alleged lost will, conclusive against the right to probate a will which differed from the award. The court said:

"But the Land Commission was authorized by law to 'investigate, confirm or reject all claims to land arising previously to the tenth day of December, 1845,' and as the will in this case vested the property at the date of the death of the testator (the 7th of June, 1845), the action of this Commission in awarding the lands as mentioned above without the entail to the survivors is conclusive against the right to prove a will *now* which would divert the property differently than awarded.

"Their action was a judgment of a Court of competent authority upon a matter within its jurisdiction, it being a 'claim for land arising previously to December 10, 1845,' *Kanaina vs. Long,* 3 Hawn., 332; *Kahoomana vs. Minister of Interior,* Ib. 635.

"But the case of *Estate of Kaniu,* 2 Hawn., 82, is referred to by the counsel for the petitioner. In this case Justice Robertson admitted a verbal will to probate, made in 1843, and although the land the testator had had been awarded to Kinimaka, and not to the devisee. I cannot believe that the attention of the learned Justice was called to this point, or he would not have thus practically set aside an award of the Land Commission of which Board he was a member." *Estate of Kekauluohi,* 6 Haw. 172.

Finally, in the leading case of *Thurston v. Bishop,* 7 Haw. 421, the absence of a land commission award was held conclusive against claimants under Kamehameha V, who had received the land by oral bequest before the establishment of the land commission, but who was still a minor when the time for filing claims before the land commission expired. The point of infancy was strongly urged, but the court held the minor bound by the neglect of his guardian to present this claim, saying:

"The statute made no exception in favor of infants, and we can make none. By Section 7 of the Act creating the Land Commission, it was to make its decisions 'in accordance with the principles established by the Civil Code of this Kingdom in regard to prescription, occupancy, fixtures, native usages in regard to landed tenures, water privileges and rights of piscary, the rights of women, the rights of absentees, tenancy and subtenancy, primogeniture and rights of adoption.' * * *

"It is to be noticed that the subject of 'infancy' is not mentioned. This is an additional reason for not admitting the disability of infancy as an exception to the statute. Claims of infants were presented by their parents or guardians. A large number of awards to Lunalilo and Victoria Kamamalu show this. These high chiefs who succeeded to the lands of Kekauluohi and Kinau respectively, both being infants at the time of the presentation of their claims, received awards for land

exceeding any other claimants in number and extent." *Thurston v. Bishop,* 7 Haw. 421, 434.

Besides the cases above cited there are numerous dicta extending throughout the Hawaiian reports substantially to the effect that a title based on an award and patent is "good against all the world" (*Kekiekie v. Dennis,* 1 Haw. 42), or is "final" (*Keelikolani v. Robinson,* 2 Haw. 522, 539, 551.)   The decisions cited, however, mainly in cases involving the estates of the sovereigns or high chiefs of the kingdom, appear sufficient to sustain the contention that none of the grounds alleged in David Kalakaua's petition, including fraud and infancy, were sufficient to warrant the court in reviewing, in a collateral proceeding, the award of the land commission.

The only apparent exception to this line of cases is the probate case of *Estate of Kaniu,* 2 Haw. 82, already referred to which was the foundation of the claim of David Kalakaua and through him of the petitioner in this case.   The actual decision of that case was not in conflict with the principles above cited, for the estate of Kaniu consisted of personal as well as real property, and the decision was to admit the will to probate, which would be by no means conclusive upon the rights of Kinimaka claiming any or all of the real estate under his land commission award.   The language of the opinion, however, indicates that all Kaniu's land would pass to Kalakaua and in this respect the case was, as we have seen, expressly criticized and disapproved in *Estate of Kekauluohi,* 6 Haw. 172.

If this court, therefore, shall enforce the decree of 1858, or by registering the title of the petitioner treat the decree as enforceable, it will be the first time in the judicial history of Hawaii that a land commission award shall have been set aside upon any pretext whatever.   This we are unwilling to do.   Apparent error on matters of evidence or upon which testimony is no longer available may well be condoned after a long lapse of time, but the question here is on a fundamental principle of Hawaiian law.   It is immaterial whether Kinimaka had re-

ceived the land from Liliha or from Kaniu, and whether, if from Kaniu, he was guilty of actual fraud in procuring his land commission award or whether he acted under the honest belief that the disapproval of Kaniu's will by the king and the verbal giving of the lands to him was conclusive.

The objection to the decree of 1858 appears to go to the jurisdiction of the court over the subject matter, for the land commission award was the final decision of a court of record which was the only court of competent jurisdiction to decide claims to land accruing prior to its establishment, and its decisions could not be attacked except by the appeal provided by law. *Thurston v. Bishop,* 7 Haw. 421, 437. Even if the objection did not go to the jurisdiction of the court the result would be the same, for under the principle of *Lawrence Mfg. Co. v. Janesville Mills,* 138 U. S. 552, already discussed, this court would not lend its aid in executing a decree which though rendered by a court having jurisdiction, was found to be erroneous. If, as has been suggested, the enforcement of the old decree is a matter of discretion, we may take into account the circumstances that the probate decision in *Estate of Kaniu,* so far as it may have indicated that the title to the real estate was vested in Kalakaua, notwithstanding the intervening land commission award, was made without that point having been raised and considered and for that reason has been practically overruled; together with the further circumstances that the decree in *Kalakaua v. Pai and Armstrong* has all the appearances of a compromise decree, consented to by the guardian of minors, it having been made without any decision by the court upon the grave question of law involved, without any disposition of the previous case of *Kukiiauhu v. Gill,* 1 Haw. 54, which it would seem necessary to distinguish, and having been entered by the clerk only after the plaintiff had discontinued as to other lands identically situated. Nor, if it is a matter of discretion, can the petitioner plead laches on the part of the appellant. The appellant's legal rights are clear and not barred by laches,

which at law are measured by the statute of limitations. The petitioner is in the position of the moving party asking substantial relief against the legal situation, and would appear to be in no better position than appellant as regards laches. The decree of *Kalakaua v. Pai and Armstrong* stood unenforced for over forty years. Kalakaua and his successors in title took no steps to have it enforced apparently because they were in possession of the land, but under the will of Kinimaka their possession was subject to fresh attack at the death of each of the successive life tenants. Moses Kapaakea Kinimaka, on the other hand, took no steps to have the decree set aside, if such procedure were possible, for the equally cogent reason that he would have no interest in doing so unless he survived the two life tenants. Upon the maturing of his rights the appellant, as his successor in title, acted promptly in bringing ejectment.

The decree of the court of land registration is reversed and the case remanded for further proceedings in conformity with this opinion.

*Lyle A. Dickey* (*E. M. Watson* with him on the brief) for Mary H. Atcherley.

*W. A. Greenwell* (*Castle & Withington* on the brief) for Lewers & Cooke, Ltd.