## LAWRENCE MANUFACTURING COMPANY *v.* JANESVILLE COTTON MILLS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WISCONSIN.

No. 102.   Argued December 2, 3, 1890. — Decided March 2, 1891.

When a party returns to a court of chancery to obtain its aid in executing a former decree of that court, the court is at liberty to inquire whether the decree was or was not erroneous, and if it be of opinion that it was erroneous, it may refuse to execute it.

When a decree in chancery is the result of the consent of the parties, and not of the judgment of the court, the court may, if its aid in enforcing it is asked by a subsequent bill, refuse to be constrained by the consent decree to decree contrary to what it finds to be the right of the cause.

THE Lawrence Manufacturing Company filed its bill against the Janesville Cotton Mills on the first day of June, 1886, in the United States Circuit Court for the Western District of Wisconsin, claiming that the letters " LL " upon sheetings of the third-class, running four yards to the pound, belonged to it as a trademark, and averring that defendant had been recently organized, and was in law and in fact the successor of the Janesville Cotton Manufacturing Company, having succeeded to and having acquired all the assets and property and good will of the latter; and that the defendant was owned and officered (with one exception) by the same persons as the Cotton Manufacturing Company, and that the defendant had advertised itself to the public as the successor in all respects of the

Cotton Manufacturing Company. That early in 1886, appellant exhibited in the same court a bill of complaint containing the allegations set forth in this bill in respect to the use of the letters " LL," against the Cotton Manufacturing Company, and that thereafterwards the appellant and the Cotton Manufacturing Company entered into a stipulation in the case, bearing date March 30, 1886 : " That the said Lawrence Manufacturing Company hereby consents that the suit commenced in the Circuit Court of the United States for the Western District of Wisconsin against said Janesville Cotton Manufacturing Company be dismissed without costs to said Janesville Cotton Manufacturing Company, and also hereby waives all claims to damages against the said Janesville Cotton Manufacturing Company ; and the said Janesville Cotton Manufacturing Company hereby agrees not to use the label or trademark 'LL' on any goods of its manufacture after the first day of July, A.D. 1886; and it is further stipulated that a consent decree discontinuing said suit without the right of appeal shall be entered in accordance with the terms thereof."

The bill further alleged that with the stipulation there was submitted to the Cotton Manufacturing Company a release proposed to be executed by appellant to said Company, and also an agreement proposed to be executed and delivered by the company to appellant, which agreement bound the Cotton Manufacturing Company and its successors in said corporation and in said business and its assigns, not to use the label or trademark " LL " on any goods of its manufacture after the first day of July, 1886; and that the stipulation, release, and agreement were adopted by the board of directors of the Cotton Manufacturing Company on the third of April, 1886, and appellant was so notified by defendant, and, pursuant to the action of the board of directors and the agreement, stipulation and contract, a consent decree was entered in that cause in the words and figures following, to wit:

" This cause coming on to be heard, Messrs. Raymond & Rainey appearing for the complainant, and Mr. George G. Sutherland appearing for the defendant, and confessing the said bill of complaint and consenting to this final finding and

decree, the court doth order, adjudge and decree as follows, the same being in accordance with the stipulation of the parties heretofore herein filed, to wit:

"First. That the total cost heretofore and now incurred herein shall be paid by the complainant.

"Second. That a perpetual injunction issuing out of and under the seal of this court against the said defendant, the Janesville Cotton Manufacturing Company, commanding it and each and every of its officers, agents, servants and employés that from and after the first day of July, A.D. 1886, they and each of them shall desist and refrain from, directly or indirectly, using said letters 'LL' upon any sheetings of their manufacture, as in said bill of complaint is mentioned."

To which was attached the following signed by counsel for the respective parties:

"We hereby assent to the foregoing form of decree, the same being in accordance with the terms of a stipulation of the parties thereto, heretofore filed herein."

That, notwithstanding the premises, the defendant being the successor in law and in business of the Cotton Manufacturing Company, issued the circular letter attached, a part of which, under the heading of "Dissolution and Reorganization" is as follows:

"The corporation known as the Janesville Cotton Manufacturing Company has been dissolved by mutual consent of the stockholders, and all of its property, consisting of two thoroughly equipped cotton mills, together with its franchises and good will, has been sold and transferred to the Janesville Cotton Mills, a new corporation organized for the purpose of continuing the manufacture and sale of the justly celebrated 'Badger State sheetings.'

"The new corporation purpose to make the three grades of sheeting known to the trade as Badger State, R, R R, and L L, under a distinct trademark and stamp of their own, consisting of a diagonal bar across the letters R & L, with or without the word 'double,' to wit: Badger State, R, Dou R ble, Dou L ble."

That appellant demanded at once that defendant should withdraw the circular letter and cease preparations to use the capital letter "L" with the word double written across it, and should not use the same; but defendant declined to comply with the demand, and threatened and proposed to use the capital letter "L" with the word double written across it as its stamp upon sheetings of the third general class, on and after July 1, 1886. Plaintiff averred that such a use would be a fraud upon the public and a fraud upon itself, and a violation of the stipulation of the contract and of the consent decree, and of the injunction ordered in the prior suit, and would cause irreparable injury. Plaintiff therefore prayed for answer, for a temporary injunction, and for general relief. Affidavits were filed with the bill and a restraining order entered, and a day assigned for a hearing of the motion for a preliminary injunction.

The defendant answered, denying that plaintiff had the exclusive right to use the letters "LL," and admitting that it was organized in April, 1886, but denying that it was the successor of the Cotton Manufacturing Company in any other sense than that it purchased the property of that company, and some of its stockholders and officers were the same as those of the Cotton Manufacturing Company. The answer admitted that in the month of February, 1886, the plaintiff exhibited the bill of complaint set forth in the bill in this case, and that the Cotton Manufacturing Company did not defend against that bill, but entered into the stipulation set forth in this bill, and that the decree therein set forth was entered; but defendant averred that that decree was not in accordance with the stipulation, which provided that the suit should be discontinued without the right of appeal; and defendant denied, upon information and belief, that the Cotton Manufacturing Company executed or agreed to execute the agreement mentioned and referred to in the bill of complaint. The answer further alleged that the Cotton Manufacturing Company at the time of the stipulation and agreement was about to go into liquidation and wind up its affairs, and would have no further occasion to use the letters "LL" after July 1, 1886;

that it had since disposed of all its property rights, and privileges to defendant, and abandoned the business of manufacturing cotton sheetings; had wound up its affairs and been dissolved; and that defendant was a wholly distinct and separate corporation from the Cotton Manufacturing Company; was not a party to the prior suit, and was not bound by the stipulation or decree, or by any other stipulation, agreement or obligation entered into or assumed by the Cotton Manufacturing Company. Upon hearing upon the pleadings and proofs, a decree was entered dismissing plaintiff's bill of complaint with costs, and thereupon the cause was brought to this court by appeal.

The evidence established that on the 30th of March, 1886, the stipulation above given was made out and signed by the Lawrence Manufacturing Company, and, with duplicates, handed to the attorney for the Cotton Manufacturing Company, together with copies of an agreement to be executed under the authority of the board of directors of the Cotton Manufacturing Company by the president and secretary, and under the seal of the company, and a letter of plaintiff's solicitor reciting these facts, and stating that he had no doubt that the Lawrence Company would authorize the settlement, and if so, would be glad to have the agreement duly executed and returned, and that if the Cotton Manufacturing Company desired it, a formal release from the Lawrence Company, duly executed, of all claims for damages, etc., would be obtained, although "the agreement of the Janesville Company made in consideration of that release, and the whole matter being of record in court, would not necessitate such a formal release from the Lawrence Company." The agreement to be executed by the Cotton Manufacturing Company was as follows:

"For and in consideration of the discontinuance by the Lawrence Manufacturing Company, of Lowell, Massachusetts, of a suit now pending in the United States Circuit Court for the Western District of Wisconsin against the Janesville Cotton Manufacturing Company, and in consideration of a release of all claims for damages for the infringement of the trademark of said Lawrence Manufacturing Company for brown

sheetings by the use of the letters 'LL,' all in accordance with the stipulation in the case now made and executed, the said Janesville Cotton Manufacturing Company does hereby, for itself, its successors, both in said corporation and in said business, and for its assigns, covenant and agree to and with the said Lawrence Manufacturing Company, its successors and assigns as aforesaid, not to use the label or trademark 'LL' on any goods of its manufacture after the first day of July, A.D. 1886."

On the third of April, 1886, the following proceedings were had by the Cotton Manufacturing Company, as shown by its records:

"Matters pertaining to the suit brought against our company by the Lawrence Manufacturing Company for infringement of their right in the use of the stamp LL on our sheetings were explained by Mr. Sutherland, and, on motion of Mr. Eldred, Mr. Sutherland was authorized and instructed, as our attorney, to sign the stipulations agreed upon by the attorneys of the Lawrence Manufacturing Company and Mr. Sutherland in behalf of the Janesville Cotton Manufacturing Company.

"On motion, Mr. Sutherland was instructed to notify the attorneys of the Lawrence Manufacturing Company that the president and secretary of the Janesville Cotton Manufacturing Company will execute, under the authority of its board of directors, the agreement to discontinue the use of said LL stamp whenever the Lawrence Manufacturing Company shall sign a formal release, duly executed, of all claims for damages, etc., against the Janesville Cotton Manufacturing Company for the use of said LL stamp."

Whereupon and on the same date the attorney of the Cotton Manufacturing Company wrote from Janesville to plaintiff's solicitor at Chicago, as follows:

"I was unable to get a meeting of the directors of the Janesville Cotton M'f'g Co. until this afternoon.

"They have just authorized me to sign the stipulations as drawn, and they further authorized the president and secretary to sign the agreement drawn by you, on receiving the release mentioned in your letter from the Lawrence M'f'g Co.

"I have sent the original stipulation to the clerk of the court at Madison, and inclose you a duplicate."

The release by plaintiff was executed, delivered to and accepted by the Cotton Manufacturing Company, and the consent decree was entered May 11, 1886.

It also appeared that the Cotton Manufacturing Company was at the time of the suit against it in embarrassed circumstances, and on the 10th of March, 1886, a resolution to dissolve the corporation, sell its property and wind up its affairs was adopted by the board of directors, which recited that it was contemplated by the stockholders of the company that some of them should immediately proceed to organize another corporation for the same purposes of manufacturing and selling cotton cloth, with a capital stock of $150,000, to be paid in cash or indebtedness of the company by the subscribers, and that each of the present stockholders of the Cotton Manufacturing Company should have the privilege of subscribing for the capital stock of the new company *pro rata*, share and share alike, in proportion to the amount of the stock of the Cotton Manufacturing Company owned by them, respectively, and upon the 11th of March this resolution was ratified at a meeting of the stockholders, and an agreement was made as to subscribing for shares in the new company, provided the project should be carried out by the sale of the property of the Cotton Manufacturing Company and the conveyance of the same to the new corporation.

On the 21st of April, 1886, the defendant, the Janesville Cotton Mills, was organized under the laws of Wisconsin by articles of association filed with the Secretary of State, and to it the Cotton Manufacturing Company conveyed its property in consideration of one dollar, "and for the further consideration that the said party of the second part assumes and agrees to pay all the indebtedness of said party of the first part due or to become due upon its promissory notes or other written contracts, which are not secured by a lien upon its property." The articles of association of the new company were signed by officers and stockholders of the old one, and were dated March 12, 1886, and provided that the new company was,

upon acquiring title to the property of the Cotton Manufacturing Company, "to assume and pay all indebtedness of said Janesville Cotton Manufacturing Company due or to become due upon its promissory notes or other written contracts which are not secured by lien upon its property, but is not to assume any indebtedness or liability secured by lien upon such property or evidenced otherwise than as above stated." The officers and stockholders of the old company were in the main the officers and stockholders of the new one.

The new company went on with the same business, and continued to use the books of the old company and substantially the same brands, except that "LL" was changed to "L," with the word double across it. There was no evidence that the agreement not to use the "LL" mark on sheetings was ever signed by the president and secretary, and the seal affixed, of the Cotton Manufacturing Company, although they were authorized to execute it as soon as the formal release should be signed, which was done. The failure to obtain the formally executed agreement was explained by one of the plaintiff's attorneys, who testified that as the stipulation was filed and decree entered and he believed the matter fully settled in good faith and the parties sufficiently and fully protected, he neglected to ask for the formal evidence of the agreement executed under the seal of the Cotton Manufacturing Company, until he was informed of the dissolution thereof by the circular letter of the defendant.

Upon the question of trademark, evidence from other cases seems to have been stipulated into this, and it was agreed by counsel that the printed record in the case mentioned below might be used if the court would permit.

*Mr. J. H. Raymond* and *Mr. W. B. Hornblower* for appellant.

*Mr. I. C. Sloan* and *Mr. J. C. Sloan* for appellee.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

We have already held in *Lawrence Manufacturing Company* v. *Tennessee Manufacturing Company*, *ante*, 537, that

plaintiff is not entitled to the exclusive right to use the letters "LL" as a trademark on sheetings running four yards to the pound, and that no case was made there for relief on the ground of actual fraud; and that decision is controlling here so far as those questions can be considered as involved. But it is insisted that the appellee, by virtue of a contract with and decree against the Janesville Cotton Manufacturing Company, is estopped from the use of the letters "LL," or any imitation thereof, and that a decree accordingly should go against it. The bill is not framed upon the theory, nor do we understand counsel so to contend, that plaintiff is entitled to relief upon the agreement alone, but that it is to be taken with the decree which was entered perpetually enjoining the Cotton Manufacturing Company from the use of the letters "LL" after July 1, 1886. Defendant denied, and it was not shown that the written agreement was ever executed by the president and secretary of the Cotton Manufacturing Company, although this was authorized to be done as soon as the release from damages was furnished, as it afterwards was, but only as part of a settlement of the pending suit, under which that suit was to be dismissed without costs to the company.

This proposed agreement provided that in consideration of the discontinuance of the plaintiff's suit, then pending, and of a release of all claims for damages, in accordance with the stipulation in the cause then made, the Cotton Manufacturing Company covenanted and agreed "for itself, its successors, both in said corporation and in said business, and for its assigns," "not to use the label or trademark 'LL' on any goods of its manufacture after the first day of July, A.D. 1886." By the consent decree subsequently entered, the case was not discontinued, but, on the contrary, a perpetual injunction was decreed against the Cotton Manufacturing Company, its officers, agents, servants and employés, restraining them and each of them, after July 1, 1886, from, directly or indirectly, using the letters "LL" upon any sheetings of their manufacture as mentioned in the bill of complaint. It was, however, provided that the total costs of the suit should be paid by the plaintiff; and no damages were awarded. This

decree, then, was in accordance with the stipulation in respect of damages and costs, but not as to the discontinuance, in place of which an affirmative decree in plaintiff's favor was substituted. And this change, made with the written assent of counsel for the respective parties as the record shows, dispensed with the occasion for a covenant on the part of the Cotton Manufacturing Company not to use the letters "LL" on goods of its manufacture after July 1, 1886, for such was the restraint decreed. But the decree did not in terms enjoin the successors of the Cotton Manufacturing Company, as a corporation and in business, and its assigns, according to the letter of the proposed agreement.

This, in plaintiff's view, left that decree incomplete, and therefore it seeks in substance to have it pieced out and then enforced under the prayer for general relief. There is no prayer in the bill that the preliminary injunction be made perpetual, but that would result if plaintiff succeeded, by a decree under the general prayer, in subjecting this defendant to the operation of the prior decree. But where a party returns to a court of chancery to obtain its aid in executing a former decree, it is at the risk of opening up such decree as respects the relief to be granted on the new bill. Hence, even if it be assumed upon the evidence that the decree against the old corporation bound the new one, yet this being in effect, in one of the two aspects, and, perhaps, the sole aspect, in which it is framed, a bill to carry the former consent decree into execution, the Circuit Court was not obliged to do so if it believed that decree erroneous; and that it was erroneous we have already decided. Inasmuch as plaintiff came into a court of equity to have the benefit of the former decree, the court was at liberty to inquire whether circumstances justified the relief. Mitf. Ch. Pl. 96. Indeed, it would seem to have devolved upon it to show that the decree was a right decree. Such is the language of Lord Redesdale in *Hamilton* v. *Houghton*, 2 Bligh, 169, 193, and of Lord Chancellor Sugden in *O'Connell* v. *McNamara*, 3 Dr. & War. 411, 412. The same principle was announced as early as 1700 by the Lord Keeper in *Johnson* v. *Northey*, Finch's Precedents in Chancery, 134.

See also *Lawrence* v. *Berney*, 2 Rep. in Ch. *127; Adams Eq. *416; 2 Dan. Ch. Pr. (4th ed.) 1586. This rule was much considered and applied in *Wadhams* v. *Gay*, 73 Illinois, 415, and approved by this court in *Gay* v. *Parpart*, 106 U. S. 679. The prior decree was the consequence of the consent and not of the judgment of the court, and this being so, the court had the right to decline to treat it as *res adjudicata; Wadhams* v. *Gay, Gay* v. *Parpart, supra; Jenkins* v. *Robertson*, L. R. 1 Sc. App. 117; *Brownsville* v. *Loague*, 129 U. S. 493, 505; *Texas & Pacific Railway* v. *Southern Pacific Co.*, 137 U. S. 48, 56; *Edgerton* v. *Muse*, 2 Hill Eq. (So. Car.) 51; *Lamb* v. *Gatlin*, 2 Dev. & Batt. Eq. 37; *Bean* v. *Smith*, 2 Mason, 252.

As, therefore, if the old company had defended the suit against it, it would have prevailed, the decree of the Circuit Court, being correct upon the merits, is also correct in that the court refused to be constrained by the previous erroneous consent decree, to decree contrary to the right of the cause.

*Affirmed.*

MR. JUSTICE BLATCHFORD did not sit in this case or take any part in its decision; nor did MR. JUSTICE BROWN, who was not a member of the court when the case was argued.