WILLIAM A. PERRY et al. Appellants, vs. THE UNITED STATES SCHOOL FURNITURE Co. et al. Appellees.

*Opinion filed December 17, 1907—Rehearing denied Feb. 6, 1908.*

1. PLEADING—*when pleas in chancery are regarded as admitting allegations of bill.* Pleas to a bill in chancery, to no portion of which bill is any answer filed, must be regarded as admitting the allegations of the bill.

2. SAME—*effect of replying to pleas in chancery after they have been sustained.* By replying to pleas in chancery after the question of their sufficiency has been argued and the pleas sustained, the complainant waives the objections to the sufficiency of the pleas and admits them to be good but denies their truth.

3. EQUITY—*equity will not enforce judgment rendered on contract against public policy.* A judgment against a corporation obtained upon a contract which was in violation of the Anti-trust law will not be enforced by a court of equity against the corporation nor the transferee of its assets, even though the latter may be regarded, in law, as a fraudulent grantee of the judgment debtor.

4. SAME—*what does not remove the taint of illegality in bond transaction.* The fact that the bonds upon which a judgment was recovered were issued to renew or refund bonds which were originally issued to the holder for merchandise sold and money loaned in furtherance of an unlawful agreement violative of the Anti-trust act does not relieve the transaction of its illegal taint, so as to justify a court of equity in lending its aid to enforce the judgment.

5. JUDGMENTS AND DECREES—*what is not equivalent to a judgment by default.* A judgment for the plaintiff, entered after defendant fails to make proof of the execution of an alleged illegal contract offered in evidence by it but which the court declined to admit without proof of execution, is not equivalent to a judgment by default, nor do such facts establish such fraud between the plaintiff and defendant as subjects the judgment to collateral attack by a transferee of the judgment debtor's assets.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

The original bill in this case was filed by John Lough-
lin against the United States School Furniture Company,
(hereafter called the United States company,) the Ameri-
can School Furniture Company, (hereafter called the Amer-
ican company,) Frederick A. Holbrook, Thomas M. Boyd,
Oliver S. Garretson, George Burkart and G. W. Perkins.
A demurrer to the bill was sustained and a decree entered
dismissing the bill, from which decree an appeal was prose-
cuted by complainant to the Appellate Court. That court
reversed the decree of the superior court and remanded the
case. (*Loughlin* v. *United States School Furniture Co.* 118
Ill. App. 36.) Subsequently, Loughlin, who was a resident
of Ohio, made an assignment under the laws of that State
for the benefit of creditors, and William A. Graham and
William A. Perry were duly appointed trustees of the in-
solvent estate, and by leave of the court, August 25, 1905,
filed a supplemental bill. Said supplemental bill alleged
that Loughlin had on the 10th day of October, 1901, in
the superior court of Cook county, Illinois, recovered a
judgment against the defendant the United States School
Furniture Company for the sum of $32,417.42 damages and
$11 costs, and that the judgment remained in full force and
effect and unsatisfied; that Loughlin had in October, 1901,
caused an execution to be issued on said judgment to en-
force its collection, but that said execution was returned by
the sheriff with the endorsement that he could find no prop-
erty of the judgment debtor in his county. The bill further
alleged that said United States company was a corporation
organized under the laws of the State of Illinois in January,
1892, with an authorized capital stock of $250,000, for the
purpose of manufacturing, buying and selling school furni-
ture and school supplies throughout the United States and
had its principal office in the city of Chicago; that it es-
tablished a business and good will which, together with its
patents for inventions and other property, aggregated in
value more than $500,000. The bill alleges that Loughlin

loaned to the United States company, at the request of its officers and directors, more than $10,000 in money, and sold and delivered to it, on credit, school furniture and supplies to an amount which, together with the amount loaned, aggregated $24,500. The bill further alleges that in February, 1892, the capital stock of the United States company was increased to $2,000,000; that Holbrook, Boyd, Garretson, Burkart and Perkins were large stockholders in the corporation and members of its board of directors; that in 1899 they, together with other parties to complainants unknown, constituting a majority of the stockholders, directors and managers of the corporation, some of whom were creditors of said United States company having no preference over Loughlin, entered into a conspiracy to cheat and defraud said Loughlin, and for that purpose organized a corporation under the laws of New Jersey on the 13th of March, 1899, called the "American School Furniture Company;" that the organizers, promoters, stockholders, officers and managers were made up and composed largely of defendants Holbrook, Boyd, Garretson, Burkart and Perkins; that upon the organization of the American company, its officers, directors and managers, including the defendants before mentioned, without the knowledge or consent of said Loughlin, for no consideration whatever, with intent to cheat, defraud, hinder and delay said Loughlin and other creditors similarly situated, procured all the business, property, assets, trade and good will of the United States company, of the value of more than $500,000, to be assigned, transferred and taken over by the American company, thereby causing the business of the United States company to be closed and abandoned and said company entirely deprived of its assets and property. The bill further charges that the promoters, stockholders and officers of the American company who were creditors of the United States company caused their own claims to be protected and paid. The bill prays that the judgment in favor of Loughlin

against the United States company may be satisfied out of the property and assets of the American company, and that if it is found the individual defendants had caused themselves to be paid, as creditors of the United States company, out of its proceeds, or that they profited to the prejudice of Loughlin by the transfer to the American company, a personal decree be entered against them.

Upon the organization of the United States company it entered into agreements with a number of other dealers in and manufacturers of school furniture and supplies located in different parts of the United States, by which said other dealers and manufacturers agreed to sell their business and good will to the United States company, and that, for a period of time named, such other dealer or manufacturer would sell his product only to the United States company at a price and upon terms named in the contract. Loughlin was a manufacturer of school furniture in Sidney, Ohio, and on February 13, 1892, entered into a written agreement with the United States company of the character above named. The amount agreed to be paid him by said company was $140,000, to be paid in the capital stock of the United States company, and Loughlin agreed he would sell all school furniture manufactured by him for a period of five years from January 1, 1892, to the United States company, and that he would accept, in part payment for school furniture manufactured by him and sold to said United States company, bonds of said company to the amount of $17,500, and that he would not, during the period of time mentioned, sell school furniture to any other person, firm or corporation.

In 1893 the Attorney General of the State of Illinois instituted a *quo warranto* proceeding against the United States School Furniture Company to revoke and annul its charter on the ground that it was a trust. A demurrer to the information was overruled, and on the 8th of July, 1895, said United States company filed a disclaimer, in

which it alleged that all agreements for the exclusive man-
ufacture and sale to it of school furniture and supplies, ex-
cept the agreements of six corporations and firms mentioned
in the information, had expired or been canceled before the
decision of the court overruling the demurrer to said in-
formation, and that since the decision overruling the de-
murrer the agreement with the remaining six parties had
also been canceled, and said United States company dis-
avowed and disclaimed the power and privilege of con-
tinuing or making any such agreements as were in the
information alleged. Thereupon a judgment was entered
imposing a fine against said United States company of $100,
and ordering it to no further exercise the power and privi-
lege of continuing in force said contracts or agreements.
Loughlin's contract with the United States company was
canceled April 26, 1895. At that time he held bonds of
the United States company to the amount of $24,500, which
matured February 1, 1897. In January, 1897, the board
of directors of the United States company adopted a reso-
lution that the bonds of the company maturing February 1,
1897, be refunded and made payable in one, two, three and
four years, with interest at seven per cent. Loughlin sur-
rendered the bonds held by him maturing February 1, 1897,
and accepted in lieu thereof bonds of the new issue, aggre-
gating $24,500. In January, 1900, these bonds not being
paid, Loughlin brought suit against the United States com-
pany to recover the principal and interest thereon. The
United States company filed a plea denying liability on the
ground that the bonds were issued in furtherance of an
agreement in restraint of trade and designed to establish a
monopoly to control the output and prices of school furni-
ture and supplies, and that this had been so declared by a
judgment entered by the circuit court of Cook county De-
cember 23, 1896. Replications to the pleas were filed, trial
had by the court without a jury and judgment rendered
in favor of Loughlin for $32,417.42 and costs.

The defendants to the supplemental bill of Perry and Graham, trustees of the estate of Loughlin, filed pleas to said bill, alleging that the claim of Loughlin upon which he procured the judgment against the United States company was illegal, invalid and void under the Anti-trust act of 1891. The pleas set forth particularly a history of how the indebtedness to Loughlin occurred, and averred: "And these defendants further show that several months prior to the institution of the suit at law by said John Loughlin against said United States School Furniture Company and in which the said judgment hereinbefore mentioned was recovered, the said United States School Furniture Company had ceased doing business and had sold and transferred all of its property and assets to various transferees; that in said suit at law said United States School Furniture Company caused the facts above set forth to be pleaded by way of special defense, but at the trial of said cause it failed to produce any witnesses in support thereof and permitted judgment to go against it by default, for the reason that it had parted with all of its property and its officers and directors considered that they had no interests to protect, which failure and omission on the part of said United States School Furniture Company to assert said defense constituted and was a fraud upon these defendants, and the judgment so entered constituted and was a fraud upon these defendants, all of which matters were well known to said John Loughlin."

The pleas were set down for argument as to their sufficiency, and, after argument, were sustained by the court. Complainants to the bill thereupon filed replications, and the cause was referred to a master in chancery to take and report the testimony, together with his conclusions, to the court. The master reported that the officers and principal stockholders of the United States company were also the principal officers and stockholders of the American company; that the American company was bound by the knowl-

edge which the officers and stockholders of the United States company had of its indebtedness and liabilities, and that the American company took the assets of the United States company subject to all indebtedness of said United States company. The master further reported that the pleas to the supplemental bill should be overruled and a decree entered in favor of the complainants in the supplemental bill. Objections to the report were overruled by the master and renewed as exceptions in the superior court. The court sustained the exceptions and entered a decree dismissing the bill for want of equity. Complainants appealed to the Appellate Court for the First District. That court affirmed the decree of the superior court, and the complainants have prosecuted this further appeal to this court.

ALDRICH & McAULEY, for appellants.

JOHN J. SYMES, (ALBERT H. MEADS, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

That the agreement between Loughlin and the United States company out of which the indebtedness to Loughlin originally accrued was in violation of the Anti-trust act, and therefore illegal, cannot be denied, and is, in fact, not questioned by the appellants. Their contention is that, the claim having been reduced to judgment, the American company and the other individual defendants cannot be heard to attack the validity of the judgment unless it be proven that it was procured through the fraud and collusion of Loughlin and the United States company, and it is denied any such proof was made. There was no answer filed to any portion of the bill. The pleas were pure pleas and are to be considered as admitting the allegations of the bill. *Gage v. Smith,* 142 Ill. 191; 16 Ency. of Pl. & Pr. 620.

Appellants contend that as the bill charges the American company took the property and assets of the United States company, paying no consideration therefor and with full knowledge of its indebtedness and liabilities, it was a fraudulent grantee of the judgment debtor, and as conclusively bound, so far as the property transferred or its proceeds is concerned, as the judgment debtor itself, unless, as before stated, the judgment was procured by the fraud and collusion of the parties. That this is correct as a general rule is sustained by the weight of authority. We do not think the proof shows there was any fraud or collusion, in fact, between the parties in procuring the judgment of Loughlin. The United States company pleaded to the suit of Loughlin against it, that the contract upon which Loughlin was seeking to recover was in violation of the Anti-trust law, and invalid. Mr. Phipps was called as a witness and testified he was the attorney for Loughlin, and that the United States company was represented by counsel at the trial. The witness testified that after he had proven his case for Loughlin, counsel for the United States company offered in evidence the agreement between Loughlin and said company referred to in the statement above; that he, as counsel for plaintiff, objected to its introduction until its execution had been first proven; that the court held the paper did not prove itself, and counsel for the United States company failing to make proof of its execution it was not received in evidence, and no further testimony being offered on the part of the defendant the court rendered judgment for Loughlin for the amount found due. This was not equivalent to a judgment by default. Nor do we think the proof establishes actual fraud and collusion which would subject the judgment to collateral attack by a transferee of the judgment debtor on that account.

The question then arises whether appellees may, under any principle of law, avail themselves of the defense set up in their pleas. The averments of the pleas that the in-

debtedness to Loughlin accrued by virtue of a contract that was in violation of law and illegal were established by the evidence.   The suit of Loughlin to recover upon the illegal contract could have been defeated if counsel for defendant had been prepared, at the trial, to make the proof.   The unlawful claim having passed into judgment, the question then arises, will a court of equity lend its aid to the judgment creditor to enforce its collection in the manner here sought?

The practice does not permit demurrers to pleas to bills in chancery.   If the complainant in the bill thinks the plea insufficient, instead of demurring he has it set down for argument as to its sufficiency.   By doing this he admits the truth of the matters averred in the plea but denies they are sufficient, in law, to bar the relief sought.   If the plea is held good he may then reply to it denying the truth of its allegations.   If he does not reply, a decree will be entered dismissing the bill.   (2 Daniell's Ch. Pr. 795; 16 Ency. of Pl. & Pr. 620-622.)   We understand the rule to be, that by replying to the plea a party waives his objections to its sufficiency and admits the plea to be good but denies its truth.   The pleas here put in issue the question whether the judgment sought to be collected out of the property and assets of the American company and its individual co-defendants was obtained upon a contract that was in violation of law, and invalid.   There can be no question that the judgment was a valid and binding judgment against the United States company, and that as against it Loughlin had a right to pursue his remedy at law to secure its payment and satisfaction, but a court of equity will not lend its aid in the enforcement of claims or rights which arise out of contracts that are contrary to the public policy of the State.   In *Harding* v. *American Glucose Co.* 182 Ill. 551, this court said (p. 616) : "The public policy of a State is to be found in its statutes, and when they have not directly spoken, then in the decisions of the courts and in

the constant practice of government officials. When the legislature speaks upon a subject upon which it has the constitutional power to legislate, public policy is what the statute passed by it indicates. (*United States* v. *Freight Ass.* 166 U. S. 290.) The public policy of the State of Illinois has always been against trusts and combinations organized for the purpose of suppressing competition and creating monopoly."

It is not from any tender consideration for parties whose relations to the illegal transactions were such as the allegations of the bill show those of the American company to have been that equity refuses to lend its aid. The grounds of such refusal by a court of equity were well stated in *Minzeheimer* v. *Doolittle,* 60 N. J. Eq. 394, where it was said: "But the complete answer to the complainants is that the court's refusal to act does not rest upon regard for the defendants. It is based on the unwillingness of the court to use the powers which were granted for the furtherance of lawful ends, in aiding schemes the nature of which is condemned by the public policy of the State,—a policy which holds a prominent place even in our constitution." Upon this subject this court said in *Goodrich* v. *Tenney,* 144 Ill. 422, on page 430: "The maxim *ex turpi contractu non oritur actio* applies in all such cases, and neither party, if *in pari delicto,* can have assistance from courts of justice in enforcing the contract. And the objection may be made by a party *in pari delicto,* for the defense is not allowed because the party raising the objection is entitled to the relief, but upon principles of public policy and to conserve the public welfare." The same rule was announced in *Crichfield* v. *Bermudez Paving Co.* 174 Ill. 466.

The pleadings here put in issue the legality of Loughlin's claim against the United States company, and not merely whether the judgment was obtained by fraud of the parties. It will be observed the plea does not aver that the parties to the judgment were guilty of any fraud, in fact,

in its procurement, but the averment is, in substance, that the failure of the United States company to exercise greater diligence in its defense and permitting judgment to go against it under the circumstances set out in the plea was a fraud upon appellees. This averment the Appellate Court held to be surplusage, and we are of opinion the defense to the bill interposed by the pleas was not dependent upon this averment or whether the parties were guilty of any fraud, in fact, in the procurement of the judgment. The proofs clearly show that claim was founded upon a contract that was in violation of law and contrary to the public policy of the State. In such cases equity will not afford relief.

It is contended by appellants that the bonds sued on by Loughlin were issued by the United States company after all its contracts with its constituent companies had either expired or been canceled and after the judgment in the *quo warranto* proceeding, and that the United States company at that time was not an unlawful combination. This position we think untenable even if it be true (which does not clearly appear from the evidence) that the United States company was not an unlawful combination at the time the bonds were issued. The bonds issued to Loughlin in February, 1897, were in renewal of bonds that had matured, and those bonds had been issued to him for merchandise sold and money loaned under the unlawful agreement. This could not have the effect of relieving the transaction of the taint of illegality. *Embrey* v. *Jemison,* 131 U. S. 336.

We are of opinion the judgment of the Appellate Court was correct, and the judgment is affirmed.

*Judgment affirmed.*