### KIMEN v. ATLAS EXCHANGE NAT. BANK OF CHICAGO.
### AWOTIN v. HEALY et al.
### No. 6179.

Circuit Court of Appeals, Seventh Circuit.

Nov. 4, 1937.

Robert F. Carey, Daniel M. Healy, and Eldbridge W. Rice, all of Chicago, Ill., for appellees.

Austin L. Wyman, of Chicago, Ill., for appellant.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Appellant seeks to reverse a decree of the District Court entered in an equity proceeding whereby his claim for damages was denied. The original proceeding in the trial court was a bill brought by a creditor of the Atlas Exchange National Bank of Chicago, then in liquidation, against it and its stockholders, in the nature of a creditors' bill. Various judgments had been procured against the bank. Executions had been returned, "no property found"; thereupon the equity suit to establish lia-bility of the stockholders for the unpaid judgments was instituted.

Appellant had previously instituted in the state court two suits against the bank to recover damages upon agreements to repurchase certain real estate bonds sold by the bank to him. One suit had been prosecuted to judgment, but the other, which is the basis of the present suit, had not reached trial. At the trial below it was stipulated that, subsequent to the commencement of the suit in the District Court, appellant and the liquidator of the bank had agreed that a certain other suit of appellant pending in the municipal court, alleging loss on account of an alleged forged check, and the suit upon the cause of action involved in the present appeal were pending in the municipal court; that the bank claimed to have good defenses to each of the same, fully set forth in the pleadings; that it was agreed that the suit on the forged check claim should be dismissed and that the cause involving the claim for damages for repurchase should be tried by the court; that the bank would interpose no active defense and offer no testimony but that the plaintiff might "recover whatever judgment he could convince the court he was entitled to under his pleadings and evidence"; that the last-mentioned suit was tried upon evidence introduced by the plaintiff therein and judgment entered by the court, without argument or objection by the bank. No appeal was taken, and the resulting judgment was made the basis of appellant's cause of action in the District Court. The master to whom the claim was referred filed a report finding that the judgment upon the repurchase agreement might be attacked in the equity suit; that the original agreement was void because contrary to public policy and ultra vires of a national bank. The court approved the report and entered a decree denying the claim and dismissing it for want of equity.

Appellant now insists that the court should have given full credence to the judgment of the state court; that, if the question there adjudicated is to be reconsidered, the agreement upon which same was based was not void because contrary to public policy or ultra vires of the corporation

Appellant frankly admits that, though he has an unreversed judgment against the corporation, since he is compelled to come into a court of equity to enforce the same against the stockholders, the District Court

was at liberty to go behind the judgment to determine whether the subject matter upon which it was based might justify equitable relief, but insists that this rule should not be applied against him here, because of the entry of the judgment, as he says, upon the consent of the bank and its liquidator.

■ Appellant, in the District Court, sought to go beyond a mere money judgment and asserted an additional remedy which a court of equity furnishes under certain facts. In this situation, the liquidator consented that the cause then pending might be heard in the state court upon the pleadings, without active presentation of defense, and that such judgment as appellant could obtain should be entered. This was not a consent judgment in the sense that any defenses or the right to appeal were waived. It was more nearly like the situation upon a default judgment. There was no stipulation that the claim should be allowed against the stockholders. Had that been the intent, the stipulation should have provided for the allowance of the claim in the equity suit in the District Court rather than agreeing that the plaintiff might proceed to judgment in the municipal court. We cannot see that this situation created in appellant any right to avoid the rule that a court of equity may inquire into a judgment entered in another cause to determine whether it is void because contrary to public policy or for other reasons, when the judgment creditor attempts to assert a remedy in equity thereon. Lawrence Manufacturing Co. v. Janesville Mills, 138 U.S. 552, 11 S.Ct. 402, 34 L.Ed. 1005; Lewers & Cooke v. Atcherly, 222 U.S. 285, 32 S.Ct. 94, 56 L.Ed. 202; Com'rs of Taxing Dist. of Brownsville v. Loague, 129 U.S. 493, 505, 9 S.Ct. 327, 32 L.Ed. 780; Perry v. United States School Furniture Co., 232 Ill. 101, 83 N.E. 444. This rule results from the unwillingness of a court of equity to permit the use of its powers, created for the furtherance of lawful ends, to aid schemes, the nature of which is condemned by public policy.

■ National banks may rightfully exercise only such powers as are expressly granted and such as are necessarily incidental to the effectuation of their chartered purposes. Incidental powers can avail neither to create powers which expressly or by reasonable implications are withheld nor to enlarge the powers granted. They are inferred and exist only to carry into effect such powers as are granted. First National Bank v. Missouri, 263 U.S. 640, 44 S.Ct. 213, 68 L.Ed. 486.

Under section 5136, Revised Statutes (12 U.S.C.A. § 24), banks are authorized to carry on such incidental "powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes" according to the provisions of the law.

■ The contract relied upon was an agreement by the president of the bank at the time he sold to appellant real estate bonds that the bank would at any time repurchase them at par. This was in effect a guarantee. Obviously the extended practice of such contracts would permit a national bank to guarantee bonds without limitation as to number, amount or date. The evident constant temptation to a bank to deal in large quantities of securities for the commissions easily earned by selling to its customers tends to produce an ever-increasing number of guarantees contingent upon the desire of the purchasers. There is no certainty that the buyers will ever require the bank to repurchase, and the bank cannot know whether it will be expected to comply with demands. Such contingent liabilities, in order to comply with the law, must be carried upon the bank's records. Their amount cannot be ascertained, thus endangering the solvency of the banking institution. To our minds such agreements are no part of the express power of a national bank or in any way incidental to the effectuation thereof. Rather they seem to us wholly beyond any express or implied grant of powers by the Congress.

In Awotin v. Atlas Exchange Bank, 295 U.S. 209, 55 S.Ct. 674, 677, 79 L.Ed. 1393, the Supreme Court, passing upon an agreement identical with that here involved, executed, however, subsequent to the amendment of February 25, 1927, § 2, 44 Stat. 1226, 12 U.S.C.A. § 24 note (a proviso which provides that the business of buying and selling investment securities shall be limited to buying and selling without recourse), held that such an agreement was in violation of that section. The agreement here involved was executed prior to the enactment of the amendment, and it is

urged that the decision of the Supreme Court in the case cited, having to do with the status of the law subsequent to the enactment of the amendment, furnishes no guide as to the status of the law prior to the amendment. It should be observed, however, that in the decision cited the Supreme Court said: "National banks are public institutions, and the purpose and effect of the statute is to protect their depositors and stockholders and the public from the hazards of contingent liabilities, attendant upon the assumption by the bank of the risk of loss by its customers, resulting from the permitted dealing in securities by the bank." In Greene v. First National Bank, 172 Minn. 310, 215 N.W. 213, 60 A.L.R. 814, discussing the question of ultra vires, the Supreme Court of Minnesota held that national banks did not have the power prior to the amendment to deal in investment securities; that an implied prohibition against such dealings resulted from the failure of Congress to grant the power; that the failure to grant the power negatived its existence. The decision was based upon the language of the Supreme Court in California National Bank v. Kennedy, 167 U.S. 362, 17 S.Ct. 831, 42 L.Ed. 198, where the court came to a similar conclusion in dealing with the acquisition of stock in another corporation by a national bank. In Knass v. Madison and Kedzie Bank, 354 Ill. 554, 188 N.E. 836, discussing the power of state banks under the state laws, the court held that guarantees of securities sold by state banks are not within the power conferred by the statutes to do a general banking business; that such guarantees were neither expressly granted nor to be inferred as incident to the powers granted; and that the power was prohibited. The Supreme Court of the United States in Awotin v. Atlas Exchange National Bank, supra, cited each of these cases with approval, and we believe the doctrine fully applicable to the situation before us.

Arguments that agreements of the character here involved are a part of the general banking business do not appeal to us, for banks of deposits, having custody of the funds of their depositors, are intended by all banking statutes, to be conducted in such manner as reasonably to protect the depositors. Periodic statements of conditions must be made; examinations by the officers of the government are had, all with the idea of procuring safety to deposits. Surely it was not intended by Congress that there should come into existence contingent liabilities by way of guarantees or suretyship which cannot be measured or determined in amount or time except by sifting the market values of the particular securities guaranteed from day to day. Such liabilities cannot be reported accurately to the statutory officials, and no bank can ascertain its liability before it knows whether there will be any demand. There is a risk of complete destruction of the banking institution, if the instances be multiplied and depressed values come into existence. We believe that the contract was beyond the power of a national banking corporation.

We believe further that the contract is void because it is also contrary to public policy. In Greene v. First National Bank, supra, it was said that the language of the act prior to the amendment of 1927 indicates that it was the intent of Congress to prohibit national banks from guaranteeing notes; that such contracts are contrary to public policy. In Knass v. Madison State Bank, supra, the court, after pointing out the undesirable character of such contracts and their fatal conflict with the inherent purpose of banking, held that, even in the absence of any expression or implication of statutory intent to nullify the power, such contracts are against public policy, as they tend to injure the public and should be held void, even though there be no specific statutory prohibition. The Supreme Court, in Awotin v. Atlas Exchange National Bank, supra, although it was dealing with the statutory law, pointed out that such contracts are forms of contingent liability inimical to sound banking and perilous to the interest of depositors and the public and cited both of the aforementioned cases.

It seems apparent that such contracts are not only now, but always have been, contrary to the public policy of all of the states and of the national government so far as charters of banking institutions are concerned.

The decree of the District Court is affirmed.