## National Bank Debt Cancellation Contracts

WALTER E. ALESSANDRONI, Attorney General, December 8, 1964.—You request the advice of this department upon the following question:

"May a national bank operating in Pennsylvania enter into a debt cancellation contract or similar arrangement, which provides that the debt will be automatically cancelled in the event of the borrower's death, without complying with Pennsylvania's insurance laws?"

Your question arises as a result of an opinion issued by Honorable James J. Saxon, Comptroller of the Currency, United States Treasury, under date of March 10, 1964, wherein he concluded:

"The use of debt cancellation contracts, the imposition of an additional charge, and the establishment of reserves as protection against losses arising out of such contracts is a lawful exercise of the powers of a National Bank. The exercise of such powers is necessary to and is a part of the business of banking. Such activities may not therefore properly be considered as engaging in the life insurance business."

Widespread borrowing and considerable increased buying on the installment plan, relying upon earnings to repay loans and make payments on account of purchases, has led to the use of "credit life insurance." The insurer issuing such policy undertakes to pay any balance due on the loan or purchase price in the event of the borrower's or purchaser's death.

The Act of May 17, 1921, P. L. 682, 40 PS §361, et seq., regulates the insurance business in the Commonwealth of Pennsylvania. The statute provides in 40 PS §367:

"Except as herein provided, the doing of any insurance business in this Commonwealth, as prescribed in this act, for insurance companies, by any private individual, association, or partnership, is prohibited. . . ." (Italics supplied.)

Section 202, article II of the Act of May 17, 1921, P. L. 682, provides, 40 PS §382:

"Purposes for which companies may be incorporated; underwriting powers. . . .

"(7) To carry on the business of credit insurance or guaranty, either by agreeing to purchase uncollectible debts or otherwise; and to insure against loss or damage from the failure of persons indebted to the insured to meet their liabilities."

Credit life insurance is now a well-established and recognized form of term insurance and is regulated in Pennsylvania by "The Insurance Company Law of 1921": Act of May 17, 1921, P. L. 682, art. I, sec. 1, et seq., which provides for incorporation, minimum capital and reserves against unpaid losses and the manner in which it is to be computed, all under the supervision of the Insurance Commissioner.

The opinion of the Comptroller permits the charging of a fee, the establishing of a reserve for the payment of claims, and would permit a National Bank to do all those things which are traditionally a part of

the insurance business. This includes the calculation of premiums, the discretion to adopt standards such as age and health of the borrower and to determine its reserve on an actuarial basis. It appears that the only difference between the debt cancellation contract and credit life insurance is the name "debt cancellation contract" instead of credit life insurance, and the consideration to be paid for the contract is called a fee rather than a premium.

We conclude from the foregoing analysis that debt cancellation contracts are credit insurance and the fee charged by whatever name it is called is an insurance premium.

The powers of national banks are specifically defined by Federal statute 12 U.S.C.A. §21, et seq., "National Banks." The power to write debt cancellation contracts is not mentioned. The only other authority of the bank is:

"To exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; . . .": 12 U.S.C.A. § 24.

The United States Court of Appeals for the Seventh Circuit in Kimen v. Atlas Exchange Nat. Bank of Chicago, 92 F. 2d 615 (7th Cir. 1937), in defining the power of national banks, stated at page 617:

"National banks may rightfully exercise *only such powers as are expressly granted and such as are necessarily incidental to the effectuation of their chartered purposes.* Incidental powers can avail neither to create powers which expressly or by reasonable implications are withheld nor to enlarge the powers granted. *They are inferred and exist only to carry into effect such powers as are granted. . . .* " (Italics supplied.)

Debt cancellation contracts have never been considered banking business or a part of the banking busi-

ness and are not incidental or necessary to accomplishing the purposes of a bank.

The Supreme Court of the United States, in Memphis City Bank v. Tennessee, 161 U. S. 186 (1896), differentiated between banks and insurance companies. It stated at page 191:

"An insurance corporation *differs radically* from a banking corporation, and the powers given to one cannot be exercised by the other without some authority granted by the State through its legislature. . . ." (Italics supplied.)

Althougn National Banks are instrumentalities of the United States, it has been consistently held that they are subject to State law so long as that law does not interfere with the purposes of the creation of the "National Banks." Accordingly, State regulation of matters outside the purpose of national banks has been upheld by the Supreme Court of the United States. In Lewis v. Fidelity & Deposit Company of Maryland, 292 U. S. 559, 54 St. Ct. 848 (1934), the court stated at page 569:

". . . *The ultimate decision of this question is for the Supreme Court of Georgia but until it decides otherwise we see no reason for not accepting the holding of the court below [Federal Court] as correct.*" (Italics supplied.)

In First National Bank v. Missouri, 263 U. S. 640, 656, 68 L. Ed. 486, 492, 44 S. Ct. 213, the court stated:

"National banks are brought into existence under federal legislation, are instrumentalities of the Federal Government and are necessarily subject to the paramount authority of the United States. Nevertheless, national banks are subject to the laws of a State in respect of their affairs unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies or conflict with the paramount law of the United States.

"*. . . since the sanction behind it is that of the State and not that of the National Government, the power of enforcement must rest with the former and not with the latter. . . .*" (Italics supplied.)

Although the Comptroller of the Currency has general authority to control the activities of National Banks, his determination with respect to nonbanking activities is subject to the laws of the particular state wherein the bank operates. In fact, Congress has legislated specifically with regard to the powers of the State to regulate the business of insurance. The McCarran-Ferguson Act, 59 Stat. 33, 34 (1945), as amended, 15 U. S. C. A. §1011-15, Supp. IV, 1964, provides as follows:

"Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States": 15 U.S.C.A. §1011.

\* \* \* \* \*

"(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

"(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, . . . unless such Act specifically relates to the business of insurance. . . .": 15 U.S.C.A. §1012.

The National Bank Act has no pertinency or relation to the business of insurance.

We therefore conclude as follows:

1. That debt cancellation contracts constitute insurance under the laws of Pennsylvania.

2. Assuming that the definition of banking business as carried on today could be construed to include the

power to write credit life insurance referred to as debt cancellation contracts, nonetheless the contracts and the banks issuing them would be and are súbject to the insurance laws of Pennsylvania pursuant to the Mc-Carran-Ferguson Act.

3. State laws are applicable to national banks unless they conflict with the national banking law or impose a burden on national banks as agencies of the Federal government. Accordingly the opinion of the Comptroller of the Currency cannot be binding upon the Commonwealth of Pennsylvania in so far as it is inconsistent with the laws of the Commonwealth of Pennsylvania.

It is our opinion and you are therefore advised that a national bank cannot lawfully write debt cancellation contracts in Pennsylvania without qualifying under the insurance laws of the Commonwealth.