540 So.2d 657 (1988)
Jack C. SCOTT
v.
BOARD OF TRUSTEES OF the MOBILE STEAMSHIP ASSOCIATION-INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION, WELFARE AND VACATION PLANS.
86-959-CER.
Supreme Court of Alabama.
September 23, 1988.
Rehearing Denied March 10, 1989.
Ann E. Taylor of Legal Services Corp. of Alabama and Donald Friedlander, Mobile, for appellant.
Michael A. Figures and Merceria Ludgood of Figures, Ludgood & Figures and William B. Harvey and Robert J. Mullican of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, for appellees.
PER CURIAM.
Pursuant to Rule 18, A.R.App.P., the United States Court of Appeals for the Eleventh Circuit presents the following certified question for our consideration: Are contractual provisions that distinguish between common law and ceremonially solemnized marriages, which deny common law marriages the same status as ceremonially solemnized ones, void as violative of the *658 public policy[1] of the State of Alabama? We answer yes.
The facts leading to our consideration of this matter are these:
The plaintiffs, Jack and Louise Scott, are purported to be common-law spouses. They have cohabited for 31 years and have one child. Prior to a job-related injury in 1974 that left him disabled, Jack Scott worked as a longshoreman at the Port of Mobile. He participates in the International Longshoremen's Association's Welfare Plan ("Welfare Plan"). The Welfare Plan provides group health insurance through Aetna Life Insurance Company ("Aetna"). The coverage of the policy extends to the qualified dependents of the participants. Prior to a 1980 amendment, common-law spouses were covered under the policy. The amendment, however, narrowed the Welfare Plan's coverage to include only the spouses of those participants who had entered into ceremonially solemnized marriages. In other words, common-law spouses are now excluded from the Welfare Plan's coverage.
In 1983, Louise Scott was hospitalized. Her resulting medical expenses totalled $28,438.24. When she tried to procure spousal benefits from the Welfare Plan, it rejected her claim. The basis for the denial was that she was a common-law spouse and therefore failed to meet its marriage requirement. Thereafter, the plaintiff, Jack Scott, filed suit in circuit court for a declaratory judgment to compel the defendants, the board of trustees of the Welfare Plan ("the Board") and Aetna, to extend dependent spousal coverage to Louise Scott. Aetna succeeded on its motion to remove the proceedings to the United States district court. That court later granted Aetna's motion for summary judgment. At trial, the Scotts maintained that the Board had failed to give them notice of the marriage requirement pursuant to the 1980 amendment. They further argued that the Board was estopped from challenging the validity of their common-law marriage. In their final argument, the Scotts asserted that the coverage terms of the policy that excluded common-law spouses are void as against public policy. The district court found that the Scotts had received sufficient notice of the 1980 amendment and that the amended terms did not violate public policy. The court further concluded that the estoppel issue did not merit its consideration. On appeal to the Eleventh Circuit, Scott reasserted his public policy arguments. Following a presentation of oral arguments, the Eleventh Circuit certified its question to this Court, 815 F.2d 653.
We note at the outset that the general rule concerning insurance plans is:
[I]nsurance companies have the right, in the absence of statutory provisions to the contrary, to limit their liability and write policies with narrow coverage; the insured has the option to purchase the policy or look elsewhere. Aetna Insurance Co. v. Pete Wilson Roofing & Heating Co., Inc., 289 Ala. 719, 272 So. 2d 232 (1972); Mooradian v. Canal Insurance Co., 272 Ala. 373, 130 So.2d 915 (1961).
... An insurer, therefore, may, with the insured's acceptance, insert as many exclusion clauses in its liability policy as it deems proper and necessary as long as they do not conflict with public policy or the statutory laws of the state. Biebel Brothers, Inc. v. United States Fidelity & Guaranty Co., 522 F.2d 1207 (8th Cir. 1975); Alabama Farm Bureau Mutual Casualty Insurance Co. v. Goodman, *659 279 Ala. 538, 188 So.2d 268 (1966). [Emphasis added.]
Cotton States Ins. Co. v. Diamond Housing Mobile Homes, 430 F.Supp. 503, 505-06 (N.D.Ala.1977).
In our prior considerations of issues involving public policy matters, we have exercised great caution. Our inquiry has been framed in terms of "whether the public interest is injuriously affected in such substantial manner that private rights and interests should yield to those of the public." Maddox v. Fuller, 233 Ala. 662, 667, 173 So. 12, 16 (1937).
The Board maintains that a valid distinction may be made between common-law spouses and spouses in a ceremonially solemnized marriage. In support of its argument, it points to the administrative convenience and argues that it would be both difficult and inherently expensive to require it to determine whether a common-law marriage exists. Such a determination is made by ascertaining whether a couple meets the four requisites of "(1) capacity; (2) present agreement or consent to be husband and wife; (3) public recognition of the existence of the marriage; and (4) cohabitation or mutual assumption openly of marital duties and obligations." Aaberg v. Aaberg, 512 So.2d 1375, 1376 (Ala.1987).
The Board's position has been duly considered, and we find it to be without merit.
It is well settled in this State that we recognize common-law marriages as well as ceremonially solemnized marriages. Piel v. Brown, 361 So.2d 90 (Ala.1978); Kelly v. Kelly, 247 Ala. 316, 24 So.2d 265 (1945); Blackwood v. Kilpatrick, 52 Ala. App. 505, 294 So.2d 753 (Civ.App.1974); Martin v. State, 19 Ala.App. 251, 96 So. 734 (1923). In Piel, we explained that "such a marital device exists in this state, not as an exception, but as a co-equal, alternate method of validating the connubial union of two people." 361 So.2d at 93.
In Beggs v. State, 55 Ala. 108, 112 (1876), this Court held that "[t]he parties [to a common-law marriage] stand to each other in the relation of husband and wife, having all the rights, and subject to all the duties, flowing from a marriage in strict conformity to the statute."
When presented with the question of whether a distinction may be drawn between common-law and ceremonially solemnized marriages, other courts have held similarly. For example, after noting the administrative convenience of recognizing only ceremonially solemnized marriages, the Colorado Supreme Court rejected arguments for distinguishing between the two methods of entering into a marriage. "The fact that a marriage created in one manner is easier to prove than a marriage created in another manner cannot alone justify the distinction...." Carter v. Firemen's Pension Fund, 634 P.2d 410, 412 (Colo.1981). Carter is distinguished from the instant case in that state action was found and therefore, the marriage distinction was held to violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. However, the reasoning of Carter can be readily transposed to the present case. We accept that reasoning and therefore reject any arguments for allowing a distinction to be made between the two forms of entering into a marriage based on administrative convenience.
The Board's argument that the license requirement would enable the Welfare Plan to insure the financial stability of its program by obviating the need to determine whether a legitimate common-law marriage exists is equally without merit. If the Board were in doubt as to whether a common-law marriage existed, it would need only to file a complaint for a declaratory judgment. See Rule 57, Ala.R.Civ.P., and § 6-6-220, et seq., Ala.Code 1975).[2]
*660 We conclude that contractual provisions denying common-law marriages the same status as ceremonially solemnized marriages are void as violative of the public policy of this State.
QUESTION ANSWERED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.
HOUSTON, Justice (dissenting).
"Nor do said laws [Alabama statutory laws of marriage] declare marriages, not solemnized in accordance with their provisions, invalid.
"We, therefore, do not feel authorized to do what the laws themselves have not done; but we are prepared to hold, and do hold, that, in this State, a marriage not celebrated in conformity with the said laws of marriages; that is, celebrated without a license issued by the judge of probate, or not by any one of the persons or religious societies named in said laws, or without complying with the other provisions of said laws, is not to be declared invalid, provided the requirements of the common law have been substantially complied with, in the celebration of the marriage; in other words, that a marriage good at the common law, is to be held a valid marriage in this State."
Chief Justice Peck in Campbell's Adm'r & Heirs v. Gullatt, 43 Ala. 57, 68-69 (1869), thus recognized common-law marriage in Alabama. Thereafter, the Court held that common law marriage is sanctioned in Alabama (Fuquay v. State, 217 Ala. 4, 114 So. 898, reversing judgment, 22 Ala.App. 243, 114 So. 892 (1927), and recognized in Alabama, Kelly v. Kelly, 247 Ala. 316, 24 So.2d 265 (1945)). Recently, the Court has stated that such marriages are co-equal with ceremonial marriages, Piel v. Brown, 361 So.2d 90 (Ala.1978); Mattison v. Kirk, 497 So.2d 120 (Ala.1986). Does this then mean that it is violative of the public policy of this state for contractual provisions to distinguish between common-law and ceremonially solemnized marriages? I think not. Mere recognition of a common law marriage, even as co-equal with a ceremonial marriage, is not a determination of a public policy that such marriages must be treated alike, in all respects and circumstances. To me, public policy is that principle of law that holds that no one can lawfully do that which has a tendency to be injurious to the public or against the public good. The "policy" is established by statute, rule of law, regulation, and perhaps, course of action; but I consider an act to be against public policy only when it would have such a bad or mischievous tendency as to be injurious to the interests of the state. How can this contractual provision, arrived at by collective bargaining, be violative of the public policy of this State? It is not. I find support for my position in Allen v. Western Conference of Teamsters Pension Trust Fund, 788 F.2d 648 (9th Cir.1986).
To the certified question, I would answer "No."
MADDOX and STEAGALL, JJ., concur.
NOTES
[1] "[T]he term `public policy' of a State is nothing more or less than the law of the State, as found in its constitution and statutes and when they have not directly spoken, then in the decisions of the courts and in the regular practice of government officials. Perry v. U.S. School Furniture Co., 232 Ill. 101, 83 N.E. 444 [(1907)]. `Public Policy' is not determined by the varying opinions of laymen, lawyers or judges as to the demands or interests of the public. Groome v. Freyn Engineering Co., 374 Ill. 113, 28 N.E.2d 274, 279 [(1940)]; Nicholson v. Good Samaritan Hospital, 145 Fla. 360, 199 So. 344, 347 [(1940)].

"When the legislature of a state has acted on a subject within constitutional authority, public policy is what the statute enacted says or indicates."
Higgins v. Nationwide Mutual Insurance Co., 50 Ala.App. 691, 282 So.2d 295 (1973).
[2] Where a third party stakeholder is compelled to make payment regardless of the outcome of conflicting third party claims, the appropriate remedy for the third party would be either an action for a declaratory judgment or an interpleader action, see Rule 22(a). Two of the most poignant examples of this, are where an insurer owes the proceeds of a life insurance policy, to which there are conflicting claims and where an administrator or executor of an estate is confronted with two or more conflicting claims to the assets of the estate.